1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

HONORABLE TANA LIN

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BAINBRIDGE TAXPAYERS UNITE, a
Washington non-profit corporation; LEE
ROSENBAUM, an individual; JANICE PYKE,
an individual; and MICHAEL POLLOCK, an
individual,

                Plaintiffs,

      v.

THE CITY OF BAINBRIDGE ISLAND, a
municipal corporation; KOLBY MEDINA, an
individual; MORGAN SMITH, an individual;
and JOHN AND JANE DOES 1-100, other
unknown individuals or legal entities who
participated in the complained of conducts,

                Defendant.

Case No. 3:22-cv-05491-TL

**PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

**NOTED ON MOTION CALENDAR:
AUGUST 5, 2022**

      Plaintiffs Bainbridge Taxpayers Unite, a Washington non-profit corporation ("BTU"), Lee

Rosenbaum, an individual ("Rosenbaum"), Janice Pyke, an individual ("Pyke"), and Michael

Pollock ("Pollock") (collectively, "Plaintiffs"), respond to Defendants The City of Bainbridge

Island, Kolby Medina and Morgan Smith's (collectively, "Defendants") Motion to Dismiss (ECF

No. 12) ("Motion") as follows:

1

## I.    INTRODUCTION

2    This is a case about public corruption in a municipal real estate deal. As alleged in the

3 Complaint, Defendants Kolby Medina and Morgan Smith—respectively the former Mayor and

4 City Manager of the City of Bainbridge Island (the "City")—engaged in fraud, bribery, and ethics

5 violations to rig a City tender for development land in favor of a seller tied to Medina, rather than

6 a lower-cost bid from a different party. In the process, they violated various federal and state laws,

7 and caused millions of dollars in collective damages to Plaintiffs—the losing bidders and City

8 residents who tried to block and undo the scheme. The City, another defendant, has failed in its

9 duty to respond. For this textbook racketeering scheme, Plaintiffs now seek remedies through the

10 Racketeer Influenced and Corrupt Organizations Act ("RICO") and state ethics laws.

11    To escape accountability, Defendants unleash a barrage of pleading challenges, from

12 standing to justiciability to statute of limitations. Each of them misses the mark, as they rely on

13 mischaracterizations of either Plaintiffs' allegations or relevant authority. As to the RICO claims,

14 Plaintiffs have standing under well-settled case law, as they have either been cheated out of a

15 valuable sale or have been forced to spend time and money opposing the scheme when the City

16 shirked its own duty. The Complaint also explicitly describes a multi-year pattern of criminal

17 violations—including detailed allegations of fraud, and use of means of interstate commerce—

18 thus spelling out the elements of RICO. As to the state law claims, Plaintiffs have sufficiently

19 alleged multiple violations of Washington's Code of Ethics for Municipal Officers based on

20 Medina's failure to disclose a major conflict of interest, and the claims are timely, as they were

21 brought well within the applicable six-year statute of limitations. Finally, Plaintiffs' claim for

22 declaratory relief is justiciable, because they suffered direct and substantial harm, and regardless,

23 the issues raised are of major public importance.

24    Viewed under the proper pleading standard and a correct reading of precedent, every aspect

25 of Defendants' motion fails. It should be denied, and Defendants held to answer for their conduct.

26

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 2
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

## II.    STATEMENT OF FACTS

Defendants' scheme is detailed in the Complaint. In brief, the City sought to build a new facility for its police department and court (the "Police-Court Facility"), and to buy land for the purpose. (Compl. ¶ 11.) Plaintiffs Lee Rosenbaum and Janice Pyke offered to sell their land on Yaquina Avenue (the "Yaquina Property") for the purpose. (*Id.* ¶ 15.) But at the same time (by at least 2017), Harrison Medical Center ("HMC")—owned by CHI Franciscan Health—was seeking to unload its own property (the "HMC Property"), where it had built a failing health care facility. (*Id.* ¶ 14.) Medina, meanwhile, had financial ties to HMC and CHI Franciscan Health, and accepted pecuniary benefits from them to ensure HMC could sell its property, while enlisting and compensating Smith to help. (*Id.* ¶¶ 13, 19-20, 45.) Thus, although the Yaquina Property was far more economical and better suited for the Police-Court Facility, Medina and Smith set about rigging the bid selection process to favor the HMC Property. (*Id.* ¶¶ 15-16.)

At a March 2018 City Council meeting, while illegally concealing Medina's relationship with HMC or CHI, Medina and Smith pressured the City Council to choose the HMC Property. (Compl. ¶ 15.) As part of this effort, they intentionally inflated the expected cost of the Yaquina Property and understated the cost of the HMC Property. (*Id.* ¶ 16.) Their figures were based on data from Coates Design, Inc., which had its own financial interest in seeing the HMC Property chosen. (*Id.* ¶ 18.) The rest of the City Council outvoted Medina and declined to move forward. (*Id.* ¶ 17.) But Medina and Smith were not finished.

After their initial failed effort, Medina, Smith, their staff, and Coates compiled appraisal data to further support their push for the HMC Property over the Yaquina Property. (Compl. ¶ 23.) As before, however, that data was intentionally and materially misleading, grossly exaggerating total cost to buy and build on the Yaquina Property while minimizing those costs for the HMC Property. (*Id.* ¶¶ 22-25.) In reality, the Yaquina Property, which was far larger than the HMC

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 3
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

Property, was being offered for less than one-eighth the price ($1,200,000 vs. $9,000,000), and would have cost millions less to redevelop for the intended Police-Court Facility. (*Id.*)

Medina and Smith presented these false numbers at a pair of City Council meetings in January 2019, while continuing to conceal Medina's financial interest in the matter. (Compl. ¶¶ 22-26.) The plan worked, and the Council voted in favor of the HMC purchase, with Medina casting the deciding vote. (*Id.* ¶ 26.) The project moved forward, with Medina negotiating the final sale price for the HMC property with HMC, despite his undisclosed financial ties to the seller. (*Id.* ¶ 29.) The sale closed in January 31, 2020, with the City paying HMC nearly $9 million (the "Contract"), even though three independent appraisers had put the value at far less—and this even after Medina and Smith manipulated the appraisal process by instructing the appraisers to use false numbers. (*Id.* ¶ 30.)

Bainbridge resident (and current City Council member) Michael Pollock hired law firm Ziontz Chestnut to file a complaint with the City's Ethics Board challenging the process and sale. (Compl. ¶ 34-35.) But the City, while acknowledging Medina's disclosure failures, gave short shrift to the issue. (*Id.* ¶ 35.) This case ensued.

### III.   LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss, "[a]ll allegations of material fact made in the complaint are taken as true and construed in the light most favorable to the plaintiff." *No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 931 (9th Cir. 2003). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007).

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 4
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

"A complaint should not be dismissed unless it appears beyond a doubt that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief." *No. 84 Employer-Teamster Joint Council Pension Tr. Fund*, 320 F.3d at 931. Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.    ARGUMENT[1]

### A.    Plaintiffs Have Pled Valid RICO Claims.

#### 1.    Plaintiffs have RICO standing because they allege injury to their business and property.

##### a.    *Rosenbaum's and Pyke's lost opportunity to sell their property is a cognizable injury.*

Plaintiffs Rosenbaum and Pyke sought to sell their property at Yaquina Avenue to the City for $1,200,000. (Compl. ¶¶ 15, 31.) But due to Defendants' fraud and corruption, the City Council never properly considered purchasing from Rosenbaum and Pyke; instead, the process was rigged in favor of HMC. (*Id.* ¶¶ 31, 50, 56.) As a result, Rosenbaum and Pyke lost $1,200,000 in sale proceeds. (*Id.*)

Courts have repeatedly agreed that losing bidders in corruptly rigged government tenders have standing under RICO. For example, in *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 643, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008), the defendants committed fraud in competitive bidding for county tax liens, and thereby obtained a "disproportionate share" of the liens. The plaintiffs filed a RICO claim, alleging that they had been harmed and had standing because the defendants' conduct had deprived them of an opportunity to compete fairly for their

---

[1] As an initial matter, the Motion should be denied because Defendants failed to "make a meaningful effort to confer," as required by Sections II.D. and II.I. of this Court's Standing Order. Although Defendants discussed Plaintiffs' RICO claim, they did not indicate that they would be moving to dismiss Plaintiffs' state law claims. And while Defendants "asked whether Plaintiffs needed an opportunity to amend their Complaint," they did not discuss the legal arguments that they intended to make in their motion.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 5
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

share. *Id.* at 644. The Seventh Circuit and Supreme Court unanimously agreed, finding that the plaintiffs had suffered cognizable harm when they lost the "valuable chance" or "opportunity" to acquire more liens. *Id.* at 645. Although there was no apparent evidence that the plaintiffs were guaranteed to win any particular liens absent the misconduct, the plaintiffs had standing.

Similarly, in *Bulletin Displays, LLC v. Regency Outdoor Advertising, Inc.*, 518 F. Supp. 2d 1182 (C.D. Cal. 2007), a billboard advertising company alleged that its competitor bribed city officials to win billboard contracts, while shutting out the plaintiff. *Id.* at 1189. The court found that the plaintiff had standing, as it had alleged it had "lost a valuable chance at winning a contract for billboard sites," and that a RICO claim could be based on "a legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes." *Id.* at 1191 (citing *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1170-71 (9th Cir. 2002)). Other decisions are in accord. *See, e.g.*, *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1343 (2d Cir. 1994) (plaintiff who claimed its bids on municipal contracts were rejected due to racketeering activity alleged property interest in lost contracts); *Astech-Marmon, Inc. v. Lenoci,* 349 F. Supp. 2d 265, 269-70 (D. Conn. 2004) (loss of opportunity to bid for contracts due to defendant's bribery is sufficient RICO injury); *Oceanic Exploration Co. v. ConocoPhillips, Inc*., No. 04-332, 2006 WL 2711527 (D.D.C. Sept. 21, 2006) (same); *BCS Servs., Inc. v. BG Investments, Inc.*, 728 F.3d 633, 638 (7th Cir. 2011) (plaintiffs had standing because they were deprived of the profit they would have made had the defendants' fraud at tax lien auctions not prevented them from being awarded as many tax liens as they would have been awarded in the absence of the fraud); *Southern Intermodal Logistics, Inc. v. D.J. Powers Co., Inc*., 10 F. Supp. 2d 1337, 1348 (S.D. Ga. 1998) (plaintiff had standing "even though [it] did not necessarily have a full-fledged property interest (*i.e*., a formal contractual right) in the contracts they claimed to have lost" by refusing to participate in a kickback scheme).

Rosenbaum and Pyke have alleged the same. As described in the Complaint, the City sought to buy property for a new municipal project, and considered both the Rosenbaum/Pyke

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 6
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

proposal (Yaquina) and the HMC (or "Harrison") proposal. (Compl. ¶¶ 15, 21.) Because of Defendants' fraud and corruption, the bidding process was distorted and the City chose the Harrison Proposal over Rosenbaum/Pyke's without proper consideration on the merits. (*Id.* ¶¶ 21-27.) As in the cases cited above, Rosenbaum and Pyke were deprived of the opportunity to sell the Yaquina property to the City, untainted by illegal conduct.

Defendants argue that Rosenbaum and Pike have asserted loss of a "mere expectancy interest" that, Defendants claim, is not a "concrete financial loss" cognizable under RICO. (ECF No. 12 at 8-11.) Under Defendants' argument, the loss of a sale to a corrupt bidder who has defrauded or bribed the government agency running the tender is too "remote," "theoretical," or "speculative" for RICO standing. (*Id.*) But besides ignoring the above decisions, Defendants misread their own authorities.

Some of the cases Defendants cite actually support Plaintiffs' position. In *Mendoza*, 301 F.3d at 1167, workers who claimed a company's illegal hiring of undocumented laborers suppressed their wages were found to have alleged a RICO injury as to their "legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes." Three years later, in *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005), the Ninth Circuit found that a plaintiff who claimed false imprisonment by police had deprived him of employment opportunities was found to have alleged sufficiently concrete injury for RICO standing, even though there was no claim he had lost a specific job, job contract, or job offer. Rosenbaum and Pyke have alleged harm at least as concrete as those plaintiffs' harm.

Other cited authorities do not concern RICO injury at all. *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1 (2010) addressed only the issue of proximate cause, finding that the defendants' failure to file certain reports did not directly cause consumers' failure to pay taxes, and thus the plaintiff city's loss of tax revenue. The court explicitly did *not* consider whether the loss of tax revenue was a harm to "business or property" under RICO. *Id.* at 8. The same is true for *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), which found only that a company's

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 7
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
Telephone: 206.319.7052

failure to pay required taxes to the state, allowing it to lower its prices and thus win business away from the plaintiff competitor, did not proximately cause the competitor's loss of business. *Id.* at 458-461. The *Anza* court assumed that the plaintiff's lost sales were cognizable RICO injury.

The rest of Defendants' cited cases are readily distinguishable. In *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002), the plaintiffs did not claim to have suffered any losses. Both *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1204-05 (C.D. Cal. 2008) and *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990) involved claims of losses that might occur in the future (respectively, potential future home foreclosures or possible loss of future commissions) but had not yet happened; here, the property sale is complete and the Yaquina proposal was rejected. (Compl. ¶¶ 26, 29.) *Hill v. Opus Corp.*, 841 F.Supp.2d 1070, 1095 (C.D. Cal. 2011) and *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1232-1235 (D. Colo. 2010) concern situations where there was no actual loss at all; either because the property involved had only contingent value (*Hill*) or because there was no allegation it was worth less than what the plaintiffs had paid for it (*Ivar*). Here, the loss to Rosenbaum and Pyke is real, measurable, and specifically alleged.

Defendants also misrepresent the Complaint's allegations, which make clear that Defendants' misconduct cost Rosenbaum and Pyke the sale of their property. Plaintiffs allege that the City was intent on undertaking the Police-Court Facility project, and considered two properties: the Rosenbaum-Pyke property (Yaquina) and the HMC property. (Compl. ¶¶ 11, 21.) The analyses and appraisals that the City commissioned, and the City Council's deliberations regarding the purchase, turned on a choice between those two properties. (*Id.* ¶¶ 15-16, 21-26.) Defendants' misconduct focused on inducing the City to choose the HMC property over the Rosenbaum-Pyke property. (*Id.*) The unmistakable conclusion is that if not for Defendants' actions, the City would have purchased the Yaquina property from Rosenbaum and Pyke, and they would have received the proceeds of the sale. That is every bit as concrete as the losses in the corrupt bidding cases

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 8
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

cited above, and far more so than the mere "hope" of a sale that Defendants claim Plaintiffs are alleging. (ECF No. 12 at 10.)

       b.  *Pollock's cost of opposing Defendants' corruption is a cognizable injury.*

  In an effort to counteract Defendants' illegal scheme, Plaintiff Pollock, a City resident, spent approximately $8,000 in attorney fees for law firm Ziontz Chestnut to file a complaint with the City's Ethics Board. (Compl. ¶ 34.) Defendants claim that this is not a cognizable injury. They are wrong.

  "Attorneys fees and legal expenses incurred in other proceedings which are proximately caused by a RICO defendant's wrongful conduct may be cognizable injuries under RICO." *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1084–85, n.33 (C.D. Cal. 2009) (citing *Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1035 (N.D. Cal. 2004)). *See also Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1166-67 (2d Cir. 1993) ("[L]egal fees may constitute RICO damages when they are proximately caused by a RICO violation"). In *Handeen v. Lemaire*, 112 F.3d 1339, 1354 (8th Cir. 1997), for example, the court found that a plaintiff who claimed he had to pay attorneys to oppose fraudulent bankruptcy claims by the defendant had suffered injury cognizable under RICO. In *Lauter*, the court found that a plaintiff paid a lawyer in response to the defendant's bad faith initiation of a police investigation had standing for a RICO claim in part on that basis. *Id.* And in *Stochastic Decisions*, the court held that legal fees incurred in responding to defendants' frivolous lawsuits were proper RICO injury. 995 F.2d at 1166-67. *See also In re Outlaw Lab'y, LP Litig.*, No. 18-CV-840-GPC-BGS, 2020 WL 1953584, at *9 (S.D. Cal. Apr. 23, 2020), *reconsideration den.*, No. 18-CV-840-GPC-BGS, 2020 WL 3469387 (S.D. Cal. June 25, 2020) (attorney fees incurred in responding to racketing activity were compensable as RICO injury); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1099, 1105 (2d Cir. 1988) (same); *Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 804 (E.D. Pa. 2007) ("[T]he payment of legal fees can be actionable injuries under RICO").

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 9
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101-1337
Telephone: 206.319.7052

To argue otherwise, Defendants cite only *Izenberg*, 589 F. Supp. 2d at 1204. But that decision held only that the legal fees incurred in filing a RICO complaint itself could not qualify as RICO injury sufficient to create standing, as such a rule would render the standing requirement meaningless, since every RICO plaintiff would automatically satisfy it. That is not what Plaintiffs are claiming here.

Defendants also claim that the Complaint fails to allege that their racketeering activity was the proximate cause of Pollock's incurring legal fees to file the ethics complaint. According to Defendants, because the ethics complaint raised only ethics code violations (rather than alleging racketeering under RICO), it could not have been in response to racketeering, and thus there is no causal relationship. (ECF No. 12 at 12.) This argument misses the point: what matters is the *conduct* that induced the expenditure of legal fees, not the nature or label of the legal claim those fees paid for. It was the same racketeering activity underlying the RICO claims—Defendants' corrupt and fraudulent manipulation of the City's real estate purchase—that the ethics complaint sought to remedy.

   c. *BTU has standing because the City is under the continuing control of the Enterprise.*

Finally, Defendants argue that BTU does not have standing because taxpayers, as indirect victims, lack standing under RICO. (ECF No. 12 at 11.) But "indirectly injured parties could recover under RICO when they show that the directly injured party was under the continuing control or influence of the defendant or his henchmen." *Carter v. Berger*, 777 F.2d 1173, 1178 (7th Cir. 1985). "The machinations of the wrongdoers, combined with the difficulty of inducing agents of the government to exact maximum effort at all times, may counsel permitting suits by indirect victims more freely in RICO cases[.]" *Id.*

Here, Plaintiffs have alleged that "[t]he City is under the continuing control and influence of the Medina Enterprise, as evidenced by the City's failure to take steps to void the Contract, notwithstanding the significant damage suffered by the City and its taxpayers." (Compl. ¶ 52.) If the Court were to accept Defendants' argument that taxpayers can never having standing under

1  RICO, then the purpose of RICO—which "was directed in part against the infiltration of

2  governments by organized criminals[,]" *Carter*, 777 F.2d at 1178, would be thwarted.

3  Defendants cite *Carter* in support of their argument that BTU, as a group of taxpayers,

4  does not have standing. (ECF No. 12 at 11.) But in *Carter*, Cook County had filed its own suit, so

5  it could not allege, as BTU has here, that Cook County was under the continuing control of the

6  RICO enterprise. 777 F.2d at 1178. Likewise, neither *Daley's Dump Truck Serv., Inc. v. Kiewit*

7  *Pac. Co.*, 759 F. Supp. 1498 (W.D. Wash. 1991), *aff'd sub nom. Imagineering, Inc. v. Kiewit Pac.*

8  *Co.*, 976 F.2d 1303 (9th Cir. 1992) nor *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 126 S. Ct.

9  1991, 164 L. Ed. 2d 720 (2006) involved a situation where, as here, the government was under the

10  continuing control of a RICO enterprise.

**2.  Plaintiffs allege racketeering activity.**

*a.  Plaintiffs allege Travel Act violations.*

13  Under 18 U.S.C. § 1961(1), violation of the federal Travel Act, 18 U.S.C. § 1952, is a form

14  of racketeering activity. The Travel Act makes it illegal to use the mails to distribute the proceeds

15  of, or to promote, manage, establish, carry on, or facilitate, an "unlawful activity"—including

16  bribery under state law. The Complaint alleges that Defendants Medina and Smith did just that.

17  (Compl. ¶ 45(g).) In particular, it alleges that Medina and Smith accepted pecuniary benefits, and

18  Medina paid Smith compensation and pecuniary benefits, in order to promote and secure HMC's

19  sale of property to the City, in violation of the Washington Criminal Code. (*Id.* ¶ 45(a)-(c).) That

20  is sufficient to allege racketeering activity for RICO purposes.

21  Plaintiffs do not address this allegation at all; their motion is silent as to the Travel Act

22  claim. They cannot challenge it for the first time in their reply. *See Docusign, Inc. v. Sertifi, Inc.*,

23  468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) ("It is well established that new arguments and

24  evidence presented for the first time in Reply are waived."). Nor could any such challenge have

25  succeeded. Defendants do not cite—and Plaintiffs have not found—any authority suggesting that

26  there are special pleading requirements for a RICO claim based on Travel Act violations. In

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 11
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

1    particular, Defendants do not point to any cases holding that when the Travel Act is cited as

2    racketeering activity, the details of the relevant bribes or mailings must be described in the

3    complaint. Thus, Plaintiffs have satisfied this RICO element.

4                    b.    *Plaintiffs allege bribery.*

5         Bribery under state law is also racketeering activity. 18 U.S.C. § 1961(1). As noted above,

6    the Complaint alleges that Medina and Smith accepted pecuniary benefits, and Medina paid Smith

7    compensation and pecuniary benefits, in order to promote and secure HMC's sale of property to

8    the City, in violation of the Washington Criminal Code, RCW 9A.68.010(1)(a), 9A.68.030(1)(b),

9    and 9A.68.050(1)(b). Complaint ¶ 45(a)-(c). Those are state bribery laws: RCW 9A.68.010 is

10   specifically titled "Bribery," while 9A.68.030 is "Receiving or Granting Unlawful Compensation"

11   and 9A.68.050 is "Trading in Special Influence." Each entails paying a public official in return for

12   that official's use of his position to confer a benefit—the essence of bribery.[2] The Complaint

13   explicitly alleges that Medina's and Smith's misconduct satisfied the elements of these criminal

14   statutes.

15        Defendants do not dispute any of this. Instead, they argue that the Complaint does not

16   provide enough detail about the bribes themselves: the amount, timing, and means of conveying

17   the "pecuniary benefit" at issue. (ECF No. 12 at 13-14.) According to Defendants, the applicable

18   pleading standards compel precise detail, pre-discovery, regarding the execution of the public

19   corruption scheme at the heart of this case.

20        Defendants are wrong. A bribery-based RICO complaint—which does not "sound in

21   fraud"—is not subject to Rule 9(b)'s enhanced specificity requirement. *See Abels v. Farmers*

22   *Commodities Corp.*, 259 F.3d 910, 919 (8th Cir. 2001) ("If the racketeering activity alleged were

23   bribery, for example, Rule 9(b) would not apply[.]"); *Fuji Photo Film U.S.A., Inc. v. McNulty*, 640

---

24   [2] RCW 9A.68.010(1)(a) requires the provision or promise of a "pecuniary benefit" in return for an official's "vote,

25   opinion, judgment, exercise of discretion, or other action in his or her official capacity." 9A.68.030(1)(b) requires
     "compensation" to a public servant for assistance in a matter in which the public servant likely has "official discretion."

26   9A.68.050(1)(b) requires request, acceptance, or agreement to accept a pecuniary benefit in return for conferring a
     benefit on a public servant with intent to secure or attempt to secure a "particular result in a particular matter."

F. Supp. 2d 300, 311 (S.D.N.Y. 2009) ("The pleading of bribery is governed by the more lenient pleading standard of Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.") (internal quotation marks omitted); *Rubke v. Capitol Bankcorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009). The only federal cases Defendants cite to support their argument are *Twombly* itself and *Landers v. Quality Communications, Inc.*, 771 F.3d 638 (9th Cir 2014), neither of which involved RICO, let alone RICO claims based on bribery, and neither of which required enhanced pleading specificity.[3]

In any event, the Complaint includes additional detail supporting the inference of bribery. As it explains, Medina had a financial relationship with and interest in HMC, both directly through his law practice and indirectly through his executive role at a non-profit organization whose leadership overlapped with HMC's and that was financially supported by HMC-affiliated persons. (Compl. ¶¶ 13, 19-20.) The Complaint also describes how Medina and Smith conspired at length to conceal Medina's financial interest from the City Council and to mislead the Council about the relative merits of the HMC and Yaquina property options, leading the City to grossly overpay HMC. (*Id.* ¶¶ 15-18, 22-27, 30-31.)

      *c.*   *Plaintiffs allege mail and wire fraud.*

Federal mail and wire fraud under 18 U.S.C. §§ 1341 and 1343, as well as the honest services version of those offenses under 18 U.S.C. § 1346, are also racketeering activity. 18 U.S.C. § 1961(1). The Complaint alleges that Medina and Smith violated each of those statutes, including by "knowingly us[ing] or caus[ing] to be used the mails and interstate wire communications." (Compl. ¶ 45(e), (f).) Among other things, Medina and Smith knowingly made representations about the relative costs of the Yaquina and HMC sites that were "material, false, and intentionally misleading" (*id.* ¶¶ 16, 22-24); concealed from the City Council Medina's financial relationship

---

[3] Indeed, Rule 9(b)'s enhanced specificity requirement for fraud allegations undermines Defendants' theory. As discussed further below, Rule 9(b) requires that a complaint alleging fraud "state with particularly" the "circumstances constituting fraud." If the general pleading requirements in Rule 8(a), as interpreted by *Twombly* and *Iqbal*, imposed the same requirement on all claims, Rule 9(b) would be superfluous.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 13
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

with HMC and resulting disqualifying conflict of interest (*id.* ¶¶ 18, 27); concealed the conflict of interest of the firm hired to evaluate the competing sites (*id.*); concealed flaws in the related property appraisals (*id.* ¶ 23); and directed appraisers to us improper assumptions in order to manipulate the projected value of the HMC site (*id.* ¶ 30). These intentionally misleading actions and omissions caused the City to massively overpay for the HMC property. (*Id.* ¶ 30.) Thus, a classic mail, wire, and honest services fraud scheme.

Defendants argue that under Rule 9(b), the Complaint must specify the precise use of the mails and interstate wires that meet those elements of the fraud statutes. (ECF No. 12 at 16.) Not so. Rule 9(b) provides that a party alleging fraud must state with particularity "the circumstances constituting fraud." It does not say the same about pleading the use of the mails or interstate wires, which need not be an "essential element" of the fraudulent scheme, but rather are a jurisdictional element necessary for a mail or wire fraud to be a federal offense under the Commerce Clause. *See Schmuck v. United States*, 489 U.S. 705, 710-711 (1989).

Courts have made clear that Rule 9(b)'s specificity requirement only concerns the specific conduct that is itself fraudulent: the false statements or omissions that mislead the victim into parting with money or property. As the Ninth Circuit explained in *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010)—one of Defendants' authorities on this point—under Rule 9(b), "the only aspects of wire (or mail) fraud that require particularized allegations are the factual circumstances of *the fraud itself*" (emphasis added). Separately, in *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004), the Ninth Circuit emphasized that Rule 9(b) requires a fraud complaint to state "the time, place, and specific content of the *false representations* as well as the identities of the parties to *the misrepresentations*" (emphasis added). Neither the Ninth Circuit nor any district courts within it have held that Rule 9(b) compels a RICO plaintiff claiming mail fraud to specify the mailings or wires involved in the scheme, unless necessary to describe the misleading communications themselves.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 14
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
Telephone: 206.319.7052

1    Defendants' authorities do not support their position. *United States ex rel. Lee v.*

2  *SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) did not involve RICO, mail fraud,

3  or wire fraud at all, much less the specific pleading of mailings or wires; it was a case under the

4  False Claims Act. *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th

5  Cir. 1991) was a summary judgment case that turned on lack of evidence, rather than a pleading

6  challenge. In *Sanford*, the issue was that the plaintiff failed to allege how the fraud itself—the

7  misleading conduct—was carried out; in that case, the plaintiff said that the fraudulent

8  representations were themselves were made by phone and mail. None of those circumstances are

9  at issue here.

10              **3.    Plaintiffs allege a pattern of racketeering activity.**

11    A RICO plaintiff must allege a "pattern" of racketeering activity, including "at least two

12  acts of racketeering" within ten years. 18 U.S.C. § 1961(5). To establish a pattern, the alleged acts

13  must be "related" and "continuous." *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989).

14  Defendants argue that Plaintiffs have not alleged conduct that meets these requirements. (ECF No.

15  12 at 17.) Again, they are wrong.

16    Racketeering acts are "related" if they have "the same or similar purposes, results,

17  participants, victims, or methods of commission, or otherwise are interrelated by distinguishing

18  characteristics and are not isolated events." *H.J., Inc.*, 492 U.S. at 240. A series of such acts is

19  "continuous" if the acts are committed over a substantial period of time. *Id.* at 241-242; *Howard*

20  *v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000). Although there is no bright-line rule for

21  what period of time is "substantial," activity extending over more than a year is typically sufficient.

22  *See, e.g., Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527-28 (9th Cir. 1995) (13-month period, and

23  possibly even under a year, sufficient).

24    The Complaint's allegations satisfy both "pattern" requirements. They allege a corrupt

25  scheme spanning from 2017 to 2020 among Defendants Medina and Smith, along with HMC

26  representatives and others, to ensure that the City bought HMC's property rather than the more

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 15
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

economical Yaquina property. Although part of the scheme involved three City Council meetings—one in March 2018 and two in January 2019 (Compl. ¶¶ 15-17, 21-26)—that was hardly the extent of it. As the allegations make clear, Medina and Smith had prepared for the 2018 meeting by working with their staff and designer Coates to generate misleading cost estimates. (*Id.* ¶ 16.) Although the scheme was frustrated that time, the efforts continued and involved preparation and presentation of further misleading data before and at the next meetings, including bogus appraisals. (*Id.* ¶¶ 22-25, 30.) The scheme continued into 2020 with Medina's improper negotiation of the purchase price and execution of the purchase. (*Id.* ¶ 29.) Throughout, Medina and Smith concealed Medina's financial ties to HMC. (*Id.* ¶¶ 13, 18-20, 26-27.)

All of the above acts and omissions were "related" because they had the same purpose—securing the sale for HMC—as well as the same participants, similar methods, and a single result: the purchase from HMC. And they were "continuous" because they went on for some three years, far longer than the one-year threshold typically applied in this circuit.

### 4. Plaintiffs allege a nexus to interstate commerce.

Defendants claim that Plaintiffs failed to allege that the racketeering activity had any nexus to interstate commerce. But a "minimal" or "de minimis" effect on interstate commerce is sufficient to establish jurisdiction under RICO. *United States v. Juvenile Male*, 118 F.3d 1344, 1348 (9th Cir. 1997). At the pleading stage, all that is required is the allegation that the defendants used the U.S. mail to execute portions of the illegal scheme. *See Cadle, Co. v. Flanagan*, 271 F. Supp. 2d 379, 389-390 (D. Conn. 2003); *Hall v. American Center Associates Ltd. Partnership v. Dick*, 726 F. Supp. 1083, 1091-92 (E.D. Mich. 1989); *Ferleger v. First American Mortg. Co.*, 662 F. Supp. 584, 588 (N.D. Ill. 1987); *R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1353 (5th Cir. 1985), *abrogated on other grounds by H.J., Inc.*, 492 U.S. 229. Plaintiffs have met that requirement.[4] (Compl. ¶ 45.)

---

[4] Additionally, two of the appraisals cited in the Complaint were performed by an out-of-state corporation—Colliers. (Compl. ¶¶ 23, 34, https://www.bainbridgewa.gov/AgendaCenter/ViewFile/Agenda/_12212020-1519, at 34.)

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 16
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

### 5.   Plaintiffs' RICO conspiracy claims are equally well-pled.

Defendants' argument that the Complaint fails to state a RICO conspiracy claim under 18 U.S.C. § 1962(d) is based on its earlier position that the Complaint fails to state a § 1962(c) RICO claim. For the reasons discussed above, Defendants' argument on the former fails, and thus the latter does as well. The Complaint alleges not only that Medina and Smith engaged in multiple racketeering acts over several years, but (unsurprisingly) that they did so pursuant to a mutual agreement. That is enough to claim a RICO conspiracy. *See United States v. Church*, 955 F.2d 688, 694–95 (11th Cir. 1992) ("Agreement to participate in a RICO conspiracy. . . can be proved . . . by showing an agreement on an overall objective, [and t]he existence of the conspiracy agreement can be inferred from the conduct of the alleged participants or from circumstantial evidence of the scheme.") (internal citations and quotation marks omitted).

### B.   Plaintiffs Have Pled Valid State Law Claims.

#### 1.   Plaintiffs' claim for violation of Washington's Code of Ethics for Municipal Officers is timely.

Citing RCW 4.16.130, Defendants contend that Plaintiffs' Third Cause of Action for Violation of Chapter 42.23, Washington's Code of Ethics for Municipal Officers—Contract Interests and Fourth Cause of Action under the Uniform Declaratory Judgments Act are time-barred. (ECF No. 12 at 19.) But Defendants have applied the wrong statute of limitations. The six-year statute of limitations set forth in RCW 4.16.040 is applicable because the claims arise out of a written agreement: the City's contract to purchase the Property from CHI Franciscan. (Compl. ¶¶ 29-38, 57-66.)

Defendants are correct that Chapter 42.23 does not contain a statute of limitations. (ECF No. 12 at 19.) But that does not mean, as Defendants suggest, that Washington's two-year catchall statute of limitations, RCW 4.16.130, automatically applies. Rather, the Court must "borrow the most analogous state law statute of limitations and apply that limitation period[.]" *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1098–99 (9th Cir. 2018). Furthermore, "[w]hen there is uncertainty

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 17
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
Telephone: 206.319.7052

as to which statute of limitation governs, the longer statute will be applied." *Stenberg v. Pac. Power & Light Co., Inc.*, 104 Wn.2d 710, 715, 709 P.2d 793 (1985).

Here, Plaintiffs' claim (and Medina's liability[5]) for violation of Chapter 42.23 and corresponding claim for declaratory relief "aris[e] out of a written agreement"—the Contract. *See* RCW 4.16.040(1) ("The following actions shall be commenced within six years: (1) An action upon a contract in writing, **or liability express or implied arising out of a written agreement**[.]") (emphasis added). *See also Saepoff v. N. Cascade Tr. Servs., Inc.*, No. 2:17-CV-957-RSL, 2019 WL 4597504, at *4 (W.D. Wash. Sept. 23, 2019) ("Claims for declaratory relief must be brought within a reasonable time. What constitutes a reasonable time is determined by analogy to the time allowed for . . . a similar action as prescribed by statute, rule of court, or other provision.") (internal citations and quotation marks omitted). Indeed, Chapter 42.23 is entitled, "Violation of Chapter 42.23, Washington's Code of Ethics for Municipal Officers—**Contract Interests**" (emphasis added). A violation occurs if a municipal officer is:

> beneficially interest[ed], directly or indirectly, **in any contract** which may be made by, through, or under the supervision of such officer, in whole or in part, or which may be made for the benefit of his or her office, or accept[s], directly or indirectly, any compensation, gratuity or reward **in connection with such contract** from any other person beneficially interested therein.

RCW 42.23.030 (emphasis added). The remedy for a violation is that the "contract made in violation of [Chapter 42.23] is void[,]" *i.e.*, the contract must be rescinded. RCW 42.23.050. A rescission claim is subject to RCW 4.16.040(1). *See, e.g.*, *Taylor v. MGC Mortgage Inc.*, No. 2:17-CV-01352-BAT, 2018 WL 4896248, at *4 (W.D. Wash. Oct. 9, 2018) (finding that six-year statute of limitations applies to rescission claim).

The Ninth Circuit concluded that the contract limitation period, not the catchall limitation period, applied in an analogous context where the statute did not specify a limitation period. In

---

[5] "Any officer violating the provisions of this chapter is liable to the municipality of which he or she is an officer for a penalty in the amount of five hundred dollars, in addition to such other civil or criminal liability or penalty as may otherwise be imposed upon the officer by law." RCW 42.23.050.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 18
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

*Hoang*, the plaintiff sued to rescind a loan agreement based on the defendant lender's violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1635(f). *See Hoang*, 910 F.3d 1096. The lender argued that Washington's two-year catchall statute of limitations should apply because TILA does not provide a statute of limitations for rescission claims. The Ninth Circuit disagreed and applied the six-year statute of limitations set forth in RCW 4.16.040(1), reasoning as follows:

> The loan agreement between [the parties] is a contract in writing. **An action to rescind that loan (under TILA or otherwise) arises out of that written agreement. Because TILA rescissions necessarily require a contract to be rescinded, contract law provides the best analogy** and we adopt the general contract law statute of limitations.

*Id.* at 1101 (emphasis added). Because the Court found that Washington's contract statute of limitations was closely analogous, it did not "need [to] resort to Washington's catchall limitation period." *Id.* at 1102. Similarly, in this case, voiding the City's contract to purchase the Property from CHI Franciscan necessarily requires the contract to be rescinded; thus, the contract law statute of limitations (RCW 4.16.040(1)) applies.

The cases Defendants cite to argue that the catchall limitation provision applies are readily distinguishable. Neither *Thompson v. Wilson,* 142 Wn. App. 803, 175 P.3d 1149 (2008) nor *Unisys Corp. v. Senn*, 99 Wn. App. 391, 994 P.2d 244 (2000) involved a claim for rescission of a contract for violation of a statute, as do this case and *Hoang. Thompson* concerned judicial review of a coroner's determinations, while *Unisys* involved a claim for a statutory right to payment. *Stenberg*, meanwhile, *supports* Defendants' position; in *declining* to apply the two-year catchall limitation provision, the court in that case noted that the purpose of the catchall provision is to "serve[] as a limitation for any cases not fitting into the other limitation provisions" and that when there is uncertainty, the longer limitation period should apply. 104 Wn.2d at 715, 721. Here, Plaintiffs' claims fit squarely into RCW 4.16.040(1), so there is no need to resort to the shorter catchall limitation provision. *See id.*; *Hoang*, 910 F.3d at 1102. Because both the vote to acquire the

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 19
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
Telephone: 206.319.7052

Property (January 29, 2019) and the purchase of the Property (January 30, 2020) occurred less than six years before Plaintiffs filed their Complaint, Plaintiffs' claims are timely. (Compl. ¶¶ 26, 29.)

### 2.   Plaintiffs sufficiently allege a claim pursuant to Chapter 42.23.

Defendants argue that Plaintiffs have failed to sufficiently allege a violation of RCW 42.23.030 because the contract at issue was between the City and HMC, not Medina, and thus he did not have a direct financial interest in the contract. (ECF No. 12 at 20-21.) But Defendants misstate the law: a direct financial interest is not required, as a violation occurs even if a municipal officer has an indirect financial interest. *See* RCW 42.23.030 ("No municipal officer shall be beneficially interested, directly **or indirectly**, in any contract . . . or accept, directly **or indirectly**, any compensation, gratuity or reward in connection with such contract from any other person beneficially interested therein."). *See also City of Northport v. Northport Town Site Co.*, 27 Wash. 543, 549, 68 P. 204, 205–06 (1902) ("Long experience has taught lawmakers and courts the innumerable and insidious evasions of this salutary principle that can be made, and therefore the statute denounces such a contract if a city officer shall be interested not only directly, but indirectly. **However devious and winding the chain may be which connects the officer with the forbidden contract, if it can be followed and the connection made, the contract is void.**") (emphasis added). Additionally, "[t]he interest of the municipal officer must be disclosed to the governing body of the municipality and noted in the official minutes or similar records of the municipality before the formation of the contract." *Id.*

Here, Plaintiffs have alleged multiple violations of Chapter 42.23. First, Plaintiffs allege that Medina was beneficially interested in the Harrison Proposal and the Contract by virtue of his employment with KCF, which received substantial donations from HMC leadership, others from CHI Franciscan Health and others related in different ways to HMC, and those contributions helped fund Medina's salary. (Compl. ¶ 60.) Plaintiffs further allege that Medina violated RCW 42.23.030 by failing to disclose his interest in the Harrison Proposal to the City Council, by failing to disclose the work he performed for HMC, CHI Franciscan, and other individuals associated

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 20
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
Telephone: 206.319.7052

with those legal entities, and by failing to recuse himself from the vote on the Harrison Proposal. (Compl. ¶¶ 63-65.) At a minimum, these allegations demonstrate that Medina was indirectly beneficially interested in the Harrison Proposal and the Contract but failed to disclose that interest. Medina clearly knew that such an interest should have been disclosed, given that he disclosed a minor conflict of interest related to the Kitsap Humane Society. (*Id.* ¶ 37.)

Even if Medina's interest qualified as a "remote interest," Plaintiffs would still have alleged a violation because the remote interests section does not apply "if the officer influences or attempts to influence any other officer of the municipality of which he or she is an officer to enter into the contract." RCW 42.23.040. Plaintiffs allege that Medina persuaded the City Council to vote in favor of the Harrison Proposal, which relieved a failing medical center (HMC) and resulted in a sale of the Property for substantially more than all appraisals commissioned by the City. (Compl. ¶ 60.)

The Attorney General Opinion cited by Defendants does not save their argument. It does not simply state, as Defendants contend, that there is no violation of RCW 42.23.030 "where a school district awards a contract to a company that employs a school board member, so long as that board member does not personally benefit from the contract." (ECF No. 12 at 20.) Defendants omit that the opinion was premised on the fact that the board member "[did] not participate in the procurement of the contract; [did] not vote to award the contract to company X; [did] not attempt to influence the vote of any other board member; and [did] not receive any compensation as a result of the contract award." AGLO 1973 No. 6. Plaintiffs allege that Medina did all those things (Compl. ¶¶ 15, 60-65), and thus have stated a claim.[6]

---

[6] Defendants' argument that the City Ethics Board's dismissal of the Ethics Complaint is "at least persuasive authority" (ECF No. 12 at 22) is unsupported by any authority. It is also undercut by Plaintiffs' allegation that the City failed to properly investigate the Ethics Complaint. (Compl. ¶¶ 34-35.)

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 21
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

### 3.   Plaintiffs have alleged a justiciable controversy.

Finally, Defendants attack Plaintiffs' declaratory relief claim, arguing that they have failed to allege a justiciable controversy because there is no "direct and substantial" harm and Plaintiffs lack standing.[7] (ECF No. 12 at 23.) But Defendants forget that a justiciable controversy is not a requirement if the issue is of "major public importance." *See DiNino v. State ex rel. Gorton*, 102 Wash. 2d 327, 330, 684 P.2d 1297 (1984)). "Whether an issue is one of major public importance depends on the extent to which public interest would be enhanced by reviewing the case." *City of Edmonds v. Bass*, 16 Wn. App. 2d 488, 496, 481 P.3d 596, 600, *aff'd*, 199 Wn.2d 403, 508 P.3d 172 (2022). Here, Plaintiffs have alleged an issue of major public importance: whether fraud and corruption by senior City officials has resulted in a voidable contract that has cost the City and its citizens at least $9,800,000. (Compl. ¶¶ 33, 70, 72.) Indeed, the "Declaration of purpose" of Chapter 42.23 highlights that the conflict of interest statutes relate to "the proper performance of [municipal officers'] duties **in the public interest**[.]" RCW 42.23.010 (emphasis added).

In any event, Plaintiffs have alleged sufficient facts to demonstrate "direct and substantial" harm and standing. The Uniform Declaratory Judgments Act "is designed to settle and afford relief from insecurity and uncertainty with respect to rights, status and other legal relations and is to be liberally construed and administered." *DiNino v. State ex rel. Gorton*, 102 Wn.2d 327, 330, 684 P.2d 1297 (1984). "Thus, standing is not intended to be a particularly high bar." *Washington State Hous. Fin. Comm'n v. Nat'l Homebuyers Fund, Inc.*, 193 Wn.2d 704, 712, 445 P.3d 533, 537 (2019). "Courts generally hold that if the illegal acts of a municipal corporation are such as to increase taxes or violate public rights, any taxpayer may bring suit for injunction, and it is not necessary for him to show special pecuniary damage to himself; general damage to the taxpaying public being held sufficient." *Barnett v. Lincoln*, 162 Wash. 613, 622, 299 P. 392, 395 (1931).

---

[7] Washington courts have found that the requirement of a direct, substantial interest encompasses the doctrine of standing, *see To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 414, 27 P.3d 1149 (2001), so Plaintiffs will address these arguments together.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 22
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

Here, Plaintiff BTU is a nonprofit corporation consisting of individuals who reside in the City of Bainbridge Island and Plaintiffs Rosenbaum, Pyke, and Pollock are individuals and residents of the City of Bainbridge Island. (Compl. ¶¶ 1-4.) Plaintiffs have alleged that Medina's violations of Chapter 42.23 have cost the City and its citizens (including Plaintiffs) $9,800,000. (Compl. ¶ 33.) Thus, Plaintiffs have alleged sufficient facts to demonstrate a direct and substantial harm and standing. *See, e.g.*, *Kightlinger v. Pub. Util. Dist. No. 1 of Clark Cnty.*, 119 Wn. App. 501, 505, 81 P.3d 876, 879 (2003) (finding a direct and substantial harm where the taxpayers alleged an interest in assuring that the PUD does not spend their tax dollars to repair appliances).[8]

## V.    CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss in its entirety. In the alternative, Plaintiffs request that the Court grant leave to amend the Complaint.

DATED this 1st day of August, 2022.

BUCHALTER
A Professional Corporation


By: */s/ Bradley P. Thoreson*
Bradley P. Thoreson, WSBA #18190
Alexandra M. Shulman, WSBA No. 48888
1420 Fifth Ave., Ste. 3100
Seattle, WA 98101-1337
Phone: 206-319-7052
Email: bthoreson@buchalter.com
Email: ashulman@buchalter.com


Joshua M. Robbins (Admitted *Pro Hac Vice*)
1800 Von Karman Avenue, Suite 800
Irvine, CA 92612
Phone: (949) 224-6284
Email: jrobbins@buchalter.com

Attorneys for Plaintiffs

---

[8] The case Defendants cite in support of their argument is not analogous. In *Yakima Cnty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 858 P.2d 245 (1993), landowners and a fire district brought a declaratory judgment action seeking determination that outside utility agreements required by the city were invalid. The defendants challenged the fire district's standing, not the landowners' standing.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 23
CASE NO. 3:22-CV-05491-TL

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

1

## CERTIFICATE OF SERVICE

2
I certify that I electronically filed the foregoing document with the Clerk of the Court

3
using the CM/ECF system and will send notification of such filing to the following:

4
Jessica A. Skelton, WSBA #36749
Shweta Jayawardhan, WSBA #58490

5
Pacifica Law Group LLP

6
1191 Second Avenue, Suite 2000
Seattle, WA 98101

7
Telephone: (206) 245-1700
Email: Jessica.skelton@pacificalawgoup.com

8
Email: Shweta.jayawardhan@pacificalawgroup.com

9
Attorneys for Defendants The City of Bainbridge
Island, Kolby Medina and Morgan Smith

10

11
DATED this 1st day of August, 2022.

12

13
*s/ Marci L. Brandt*
Marci L. Brandt, Legal Assistant

BN 72015517v1

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 24
CASE NO. 3:22-CV-05491-TL