1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

| | |
|---|---|
| BAINBRIDGE TAXPAYERS UNITE, a Washington non-profit corporation; LEE ROSENBAUM, an individual; JANICE PYKE, an individual; and MICHAEL POLLOCK, an individual, | CASE NO. 3:22-cv-05491-TL |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |
| v. | |
| THE CITY OF BAINBRIDGE ISLAND, a municipal corporation; KOLBY MEDINA, an individual; MORGAN SMITH, an individual; and JOHN AND JANE DOES 1-100, other unknown individuals or legal entities who participated in the complained of conduct, | |
| Defendants. | |

This matter comes before the Court on Defendants City of Bainbridge Island, Kolby

Medina, and Morgan Smith's motion to dismiss (Dkt. No. 12). Having reviewed the relevant

record and governing law, the Court GRANTS the motion IN PART with respect to Plaintiffs

Bainbridge Taxpayers Unite, Lee Rosenbaum, Janice Pyke, and Michael Pollock's Racketeer

Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* (RICO) claims, GRANTS

leave to amend the RICO claims as specified, and DEFERS ruling on the state court claims.

## I.   BACKGROUND

On June 2, 2022, Plaintiffs filed this suit in Kitsap County Superior Court. Dkt. No. 1-1.

Plaintiffs Lee Rosenbaum and Janice Pyke are residents of the City of Bainbridge Island who

had hoped to sell a property they owned at Yaquina Avenue to the City. *Id.* ¶¶ 2, 3, 15. Plaintiff

Michael Pollock is a current City of Bainbridge Island City Council member who filed an

anonymous Complaint with the City's Ethics Board in September 2020 (Ethics Board

Complaint), regarding much of the same conduct alleged in the complaint in this case. *Id.* ¶¶ 4,

34; Dkt. No. 12 at 1, 4–5. Plaintiff Bainbridge Taxpayers Unite (BTU) is a Washington nonprofit

corporation alleged to consist of "individuals who reside in the City of Bainbridge Island who

have been, and will continue to be, directly impacted by the illegal actions of the Defendants."

Dkt. No. 1-1 ¶ 1. Plaintiff Pollock is a BTU member. *Id.* ¶ 56.

Plaintiffs allege that former City of Bainbridge Island City Council member Kolby

Medina, former City Manager Morgan Smith, and others (as part of "the Medina enterprise")

engaged in misconduct that induced the City Council to purchase an exorbitantly priced property

owned by Harrison Medical Center (HMC) for a new police and municipal court facility. *Id.* ¶¶

6–8, 11–12, 16, 30–33, 41–42. Plaintiffs claim that Medina and Smith materially misrepresented

the cost of their proposal to purchase the HMC site at 8804 Madison Avenue North on

Bainbridge Island (the Harrison proposal). *Id.* ¶¶ 12, 21–23.

According to the complaint, HMC's facility was operating at an annual loss and its

owners "began exploring ways to dispose of the liability, through discussions with Medina" and

1   others. *Id.* ¶ 12. At the time the City of Bainbridge Island purchased the HMC site, Medina was

2   serving as its mayor and was on the City Council. *Id.* ¶ 6, 13. Smith was serving as the City

3   Manager. *Id.* ¶¶ 7, 16. Medina allegedly had a financial interest in HMC from working as an

4   attorney who "has performed or overseen the performance of work for HMC and its parents,

5   affiliates, agents, principals, executives and employees" and through his paid work as President

6   and CEO of the Kitsap Community Foundation, which shared leadership with HMC and received

7   substantial donations and other support from HMC leaders. *Id.* ¶¶ 13, 19–20. Plaintiffs contend

8   that representatives of HMC's parent company CHI Franciscan Health approached City

9   representatives to offer to sell the failing healthcare facility for use as the new police-court

10  facility in 2017 or even earlier. *Id.* ¶ 14. During a 2018 city council meeting, Medina allegedly

11  pressured other City Council members to consider *only* the HMC site for the police-court facility

12  instead of also considering a competing site owned by Plaintiffs Rosenbaum and Pyke at

13  Yaquina Avenue. *Id.* ¶ 15. The complaint further asserts that Medina, Smith, and their staff

14  presented "material, false, and intentionally misleading" estimates prepared by Coates Designs, a

15  group without prior experience with municipal buildings. *Id.* ¶¶ 11, 16. At the meeting, Medina

16  and Smith purportedly falsely claimed that the Yaquina site could cost over twice as much as the

17  HMC site ("an estimated $34 million, excluding land costs" compared to "as little as $15.3

18  million") and concealed Medina's and Coates Designs' financial interests in selecting the HMC

19  site. *Id.* ¶¶ 16, 18.

20          In 2019, the City Council again met to consider "the two alternatives" for the police-court

21  facility. *Id.* ¶ 21. Plaintiffs allege that Medina, Smith, their staff, and Coates Design all knew that

22  the appraisals showing the Yaquina Avenue site to be more costly were flawed because they

23  inflated the value of the HMC site, didn't reflect the cost of retrofitting the HMC property as a

24  police-court facility, and minimized the much larger size of the proposed Yaquina site. *Id.* ¶¶

22–25. On January 29, 2019, the City Council voted 4-3 in favor of the Harrison proposal, and Medina did not recuse himself from the vote. *Id.* ¶¶ 26–27. On January 31, 2020, the City of Bainbridge Island entered into a contract with CHI Franciscan to purchase the HMC site. *Id.* ¶ 29. Medina allegedly engaged in back-room negotiations in violation of Washington State Public Meeting laws to negotiate the sale price of the HMC site. *Id.* Medina and Smith also allegedly instructed independent appraisers who were evaluating the HMC site to incorrectly assume its continued use as a medical facility "so the value would be artificially high, and look better in comparison to [the] Yaquina [site]." *Id.* ¶ 30.

Plaintiffs contend that the City lost money by overpaying for the HMC site, incurring millions of dollars in municipal bond costs to cover that purchase, and renovating the site—costs totaling over $23 million. *Id.* ¶¶ 30, 32–33. Plaintiff Pollock filed a formal Ethics Board Complaint against Medina related to the alleged undisclosed conflict of interest in the HMC site, incurring $8,000 in attorney fees. *Id.* ¶ 34–36. Plaintiffs represent that in their response to the Ethics Board Complaint "the City admitted that Medina had violated the Ethics Code, but made clear that it was not interested in investigating the matter or evaluating its options, including contractual recission as void as a matter of law" since Medina was no longer on the Council. *Id.* ¶ 35. Plaintiffs cite an example of a time when the City Attorney advised Medina to recuse himself from voting in cases where "there's money going from one entity to another, if you think there's the potential for the perception of a conflict" when Medina disclosed a potential conflict which was less significant than the Harrison proposal conflict.[1] *Id.* ¶ 37.

---

[1] The previous conflict arose when the City Council was voting on the Kitsap Humane Society's recommended updates to the municipal animal control code. Dkt. No. 1 ¶ 37. Kitsap Community Foundation had previously given grants to the Kitsap Humane Society. *Id.*

Plaintiffs have sued Medina, Smith, and the City of Bainbridge Island[2] seeking damages pursuant to their civil RICO claims, a judgment declaring Defendant Medina's actions a violation of Washington's Code of Ethics for Municipal Officers statute, a judgment declaring the City's contract with CHI void, an injunction barring the City of Bainbridge Island from executing further contracts arising out of the Harrison proposal, and recovery of attorney fees and costs. *Id*. at 15–16.

Defendants removed the case to this Court on July 6, 2022. Dkt. No. 1. On July 14, 2022, Defendants filed the instant motion to dismiss under: (1) Rule 12(b)(6) for failure to state a claim upon which relief can be granted on grounds that it "lacks a cognizable legal theory" or "fails to allege sufficient facts to support a cognizable legal theory," and (2) Rule 12(b)(1) for lack of subject matter jurisdiction on standing grounds. Dkt. No. 12 at 6 (citations omitted). On November 15, 2022, the Court held oral argument on the motion to dismiss. Dkt. No. 30.

## II.  LEGAL STANDARD

When a plaintiff "fails to state a claim upon which relief can be granted," a defendant may move for dismissal. Fed. R. Civ. P. 12(b)(6). In reviewing a 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient, a claim has "facial plausibility" when the party seeking relief pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

---

[2] Plaintiffs have also included Doe defendants who may have "participated in" or "benefited from" the misconduct they describe in the complaint. Dkt. No. 1-1 ¶ 8.

Civil RICO claims based on fraud are subject to a heightened pleading standard under Rule 9(b), which requires "the circumstances constituting fraud . . . be stated with particularity." *See Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986); Fed. R. Civ. P. 9(b). The complaint must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (citations omitted), *cert. denied*, 552 U.S. 985. This heightened pleading requirement applies to RICO claims. *See Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991), *cert. denied*, 502 U.S. 1094 (1992).

A motion to dismiss can also be brought where subject matter jurisdiction is lacking. *See* Fed. R. Civ. P. 12(b)(1). The Court must dismiss a case if it determines that it lacks subject matter jurisdiction "at any time." Fed. R. Civ. P. 12(h)(3).

## III.   DISCUSSION

### A.   The Conferral Requirement

Plaintiffs ask the Court to deny the motion to dismiss because Defendants failed to "make a meaningful effort to confer" with them prior to filing the motion. Dkt. No. 17 at 5, n.1. Plaintiffs contend that Defendants did not indicate that they would be moving to dismiss the state law claims, and while Defendants asked Plaintiffs whether they needed an opportunity to amend the complaint, "they did not discuss the legal arguments that they intended to make in their motion." *Id*. Defendants claim that they meaningfully met and conferred with Plaintiffs, speaking with opposing counsel over the phone and even delaying filing of their motion to dismiss "to allow full consideration of whether to amend." Dkt. No. 20 at 3, n.3.

This Court's standing order requires parties to include a certificate of conferral with any motion to dismiss. Judge Tana Lin, Standing Order for All Civil Cases, Sections II(D), II(I) (last

updated April 26, 2022), https://wawd.uscourts.gov/judges/lin-procedures. Alongside their motion to dismiss, Defendants included a certification that on July 11, 2022, their counsel conferred with Plaintiffs' counsel via telephone. Dkt. No. 12 at 24. Defense counsel avers that Plaintiffs' counsel emailed to confirm that they did not need an opportunity to amend the complaint the day before Defendants filed their motion. *Id*. Plaintiffs do not contest this email exchange, nor do they provide any specific reason why they were prejudiced or otherwise surprised that Defendants moved to dismiss the state law claims as well as the RICO claims. *See* Dkt. No. 17. The Court is satisfied that the conferral requirement was met for purposes of the instant motion but encourages counsel to be more precise in communications with each other as this case progresses to avoid having to raise further disagreements to the Court's attention.

### B.    The Relevant Record

Defendants have appended materials to their motion that were neither filed alongside nor hyperlinked in the complaint: (1) the decision on Plaintiff Pollock's Ethics Board Complaint and (2) a Washington Attorney General opinion from 1973. *See* Dkt. Nos. 12-1, 12-2. They also refer to (and include the hyperlink for) an appraisal obtained by the owner of the HMC site. Dkt. No. 12 at 4.

Generally, a district court may only consider the pleadings when ruling on a 12(b)(6) motion to dismiss; otherwise, it must convert the motion to dismiss into a motion for summary judgment. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). However, courts may properly consider the following extrinsic evidence when ruling on a 12(b)(6) motion: (1) "material which is properly submitted as part of the complaint;" (2) documents not physically attached to the complaint on which the complaint "necessarily relies" and whose authenticity is not contested; and (3) matters of public record. *Id*. at 688–89; *see also Allen v. Wilmington Trust, N.A.*, 735 F. App'x 422, 423 (9th Cir. 2018) (describing *Lee v. City of L.A.* as setting forth the circumstances

under which a district court may take judicial notice in ruling on a motion to dismiss for failure to state a claim). A court may consider unattached documents on which a complaint "necessarily relies" where: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claims, and (3) no party questions the authenticity of the document." *U.S. v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011) (citations omitted).

Matters of public record may be judicially noticed so long as they are not "subject to reasonable dispute." *Id.* (quoting Fed. R. Evid. 201(b) and *Lee v. City of L.A.*, 250 F.3d at 689). A fact is not subject to reasonable dispute if it is (1) "generally known" within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

### 1. Consideration of the Ethics Board Complaint and the Ethics Board's Decision

Defendants note that because the complaint in this case "references and relies upon, but does not attach" an Ethics Board Complaint filed with the City of Bainbridge Island's Ethics Board and the Board's decision, the Court can consider those documents. Dkt. No. 12 at 3. The Court notes that the civil case complaint references and includes a hyperlink for the Ethics Board Complaint and also references the Ethics Board's decision without including that decision as a link or attachment. *See* Dkt. No. 1-1 ¶¶ 34–35. Plaintiffs do not contest Defendants' representation that the Court may consider the Ethics Board's decision and seem to encourage the Court to consider the text of the Ethics Board Complaint. *See* Dkt. No. 17 at 10 (Plaintiffs' response brief discussing how the Court should interpret the Ethics Board Complaint, without raising an issue about the Court's consideration of the Ethics Board Complaint or related decision). The Ethics Board Complaint and the Ethics Board's decision are referred to in the

complaint, are central to Plaintiffs' claims,[3] and Plaintiffs have not questioned the authenticity of

the documents when they had an opportunity to do so. The Court thus TAKES NOTICE of the

Ethics Board Complaint and the Ethics Board's decision in this decision.

The Ethics Board Complaint was filed by Plaintiff Pollock anonymously, which led the

Ethics Board to grant it less credibility. Dkt. No. 12-1 at 1, 5–7; Dkt. No. 1-1 ¶ 34. The Ethics

Board Complaint was lodged on September 15, 2020, (Dkt. No. 12-1 at 1) and centered on two

contracts the City Council awarded to groups with whom Defendant Medina had purportedly

held improper and undisclosed connections; one of those contracts was the contract to build the

police-court facility at the HMC site. *Id*. at 1–3. Though the Ethics Board Complaint alleged

multiple violations of the City of Bainbridge Island's Code of Conduct and Ethics Program, it

conspicuously did not include any allegations that Defendant Medina or his family received any

financial benefit based on his vote on the HMC contract. *Id*. Defendant Medina responded that

"[i]n order for me to have violated the Ethics Code, I must have had an actual financial or private

interest in a vote that I took." *Id*. at 4.

The Ethics Board found that the Ethics Board Complaint lacked reasonable credibility

that even if true, the facts presented would not constitute an ethics violation. *Id*. at 5–8.

Specifically, the Board said it would be "irresponsible" of them to assume connections that had

not been demonstrated (such as assuming that Defendant Medina had received increased pay or

otherwise personally benefit from contributions made to the Kitsap Community Foundation). *Id*.

at 6–7. While the Board found credible that the Foundation had an anonymous donor whom

Defendant Medina did not disclose on his public finance disclosures, it concluded that "those

---

[3] The Ethics Board decision undermines Plaintiffs' allegations that Medina acted in a corrupt manner as a City official, and the incurrence of legal fees to file the Ethics Board Complaint is the proffered basis for RICO standing for Plaintiff Pollock.

facts, even if true" did not violate the City of Bainbridge Island Code of Conduct and Ethics Program. *Id*. at 8. The Board dismissed the Ethics Board Complaint. *Id*.

### 2.    Consideration of the Omitted Appraisal

Defendants ask the Court to take judicial notice of an appraisal that valued the HMC property at $9.7 million. Dkt. No. 12 at 4. The appraisal is a matter of public record that is not subject to reasonable dispute; it was included on the agenda packet (available online) for the City Council's March 26, 2019, meeting. *See id*. Plaintiffs do not contest the Court's judicial notice of this document. *See* Dkt. No. 17. The Court thus TAKES NOTICE of the appraisal.

### 3.    Consideration of the Attorney General Opinion

Defendants do not provide context for their enclosure of a 1973 opinion by the state of Washington's Attorney General. *See* Dkt. No. 12. The opinion provided guidance on a question from the King County Prosecuting Attorney regarding whether RCW 42.23.010 *et seq.* prohibits certain municipal contracts due to municipal leaders' "beneficial interests" in those contracts based on specific circumstances. Dkt. No. 12-2 at 1. Defendants contend that Medina's conduct "cannot violate RCW 42.23.030" because he did not have a beneficial financial interest in the City's contract with HMC. Dkt. No. 12 at 21. As explained in Part III.C.1.b.1 *infra*, RCW 42.23.030 cannot be a basis for the civil RICO claims alleged. A request for judicial notice may be properly denied if an exhibit is "irrelevant or unnecessary to deciding the matters at issue." *Nyelon v. Cnty. of Inyo*, No. 16-712, 2016 WL 6834097, at *4 (E.D. Cal. Nov. 21, 2016) (citing, *inter alia*, *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1410 n.2 (9th Cir. 1990) (declining to take judicial notice of a separate action that was irrelevant to the case), *cert. denied*, 498 U.S. 1109 (1991)). Because the Court need not consider whether Medina violated RCW 42.23.030, it DECLINES TO TAKE JUDICIAL NOTICE of the Attorney General's opinion at this time.

## C.    RICO Claims

The only federal law claims presented in the complaint are a civil RICO claim under 18 U.S.C. § 1962(c) and a RICO conspiracy claim under 18 U.S.C. § 1962(d). *See* Dkt. No. 1-1 at 20–24.

### 1.    RICO Claim Under 18 U.S.C. § 1962(c)

To establish a civil RICO violation, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Brotherhood of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (quoting *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005), *cert. denied,* 547 U.S. 1192 (2006)). Defendants seek dismissal of Plaintiffs' RICO claims on multiple grounds: (1) lack of standing, (2) failure to allege appropriate predicate acts, (3) failure to allege a pattern of racketeering activity, and (4) failure to allege interstate activity. Dkt. No. 12 at 7.

#### *a.   Standing*

"To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) and *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)), *cert. denied*, 555 U.S. 970. Under RICO, a plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima*, 473 U.S. at 496.

Plaintiffs claim to have suffered three cognizable injuries: (1) Plaintiffs Rosenbaum and Pyke lost the opportunity to sell their property at Yaquina Avenue to the City Council for $1,200,000; (2) Plaintiff Bainbridge Taxpayers Unite, "as a group of taxpayers," are indirect victims of the alleged racketeering activity;[4] and (3) Plaintiff Pollock accrued approximately $8,000 in attorney fees to file the Ethics Board Complaint. Dkt. No. 17 at 5–11.

(1)    Lost Opportunity to Sell

Plaintiffs claim "the process was rigged in favor of HMC" and "the City Council never properly considered purchasing from Rosenbaum and Pyke." *Id*. at 5. They contend that the City Council was choosing between the HMC property and the Yaquina property, such that "if not for Defendants' actions," the City would have purchased the Yaquina property and Plaintiffs Rosenbaum and Pyke "would have received the proceeds of the sale." *Id*. at 8.

"Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005), *cert. denied sub nom. Parks v. Diaz*, 546 U.S. 1131 (2006).

Plaintiffs allege "depriv[ation] of the opportunity to sell the Yaquina property to the City, untainted by illegal conduct." Dkt. No. 17 at 7. Defendants note that though Washington law "protects a business expectancy from tortious interference, that claim requires the existence of a valid business expectancy." Dkt. No. 12 at 10 (citing *Commodore v. Univ. Mech. Contractors, Inc.*, 120 Wash.2d 120, 137 (1992) and *Life Designs Ranch, Inc. v. Sommer,* 191 Wash. App. 320, 337 (2015)). Indeed, this district has previously found that Washington law recognizes "no

---

[4] The complaint does not make clear whether the instant litigation was brought due to an injury to Bainbridge Taxpayers Unite or to its members. *See* Dkt. No. 1-1. In oral argument on the motion to dismiss, Plaintiffs' counsel clarified that the litigation was brought on behalf of the organization as an entity.

property right in the mere desire to obtain business, without a valid contract or concrete

expectation of gain." *Daley's Dump Truck Serv., Inc. v. Kiewit Pac. Co.*, 759 F. Supp. 1498,

1503 (W.D. Wash. 1991); *see also Beauregard v. Lewis Cnty., Wash.*, 329 F. App'x 710, 713

(9th Cir. 2009) (one element of a tortious interference claim under Washington law is "existence

of a valid contractual relationship or business expectancy") (citing *Pac. Nw. Shooting Park Ass'n*

*v. City of Sequim*, 158 Wash.2d 342 (2006)). Plaintiffs do not peg their theory of harm on

tortious interference or on violations of any other state laws, but they do assert that Rosenbaum

and Pyke had an expectation that, but-for the purchase of the HMC property, the City would

have purchased the Yaquina property. *See* Dkt. No. 17 at 8. The complaint alleges that the City

was considering these "two alternatives" for the new facility and "[o]n January 29, 2019, a

special City Council meeting was held to decide between the Harrison and Yaquina proposals."

Dkt. No. 1-1 ¶¶ 21, 26. In their reply, Defendants insist that because there was no competitive

bidding process for the proposal, the City did not simply face a binary choice between the HMC

and Yaquina properties. Dkt. No. 20 at 4–5. However, at this stage, the Court must accept

Plaintiffs' allegation that the City would have otherwise purchased the Yaquina property as true.

Plaintiffs maintain that Defendants' fraud and corruption caused a distortion of the

bidding process in which "the City chose the Harrison Proposal over Rosenbaum/Pyke's without

proper consideration on the merits." Dkt. No. 17 at 7 (citing Dkt. No. 1-1 ¶¶ 21–27). "Proximate

cause for RICO purposes requires 'some direct relation between the injury asserted and the

injurious conduct alleged.' " *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods.*

*Liab. Litig.*, 842 F. App'x 112, 114 (9th Cir. 2021) (quoting *Holmes*, 503 U.S. at 269). Plaintiffs

Rosenbaum and Pyke allege that Defendants' racketeering activities proximately caused them to

lose out on the opportunity to sell the Yaquina property to the City for $1,200,000. Dkt. No. 1-1

¶ 26, 31, 50. Based on their representation that the City was choosing between the HMC and

1    Yaquina properties, they have sufficiently alleged that this injury was a foreseeable and direct

2    consequence of Defendants "inducing the City Council to vote to purchase the Property from

3    HMC." *See id.* at ¶ 16.

4            Therefore, at this stage of the case where all well-pleaded factual allegations must be

5    accepted as true (*Iqbal*, 556 U.S. at 678), Plaintiffs Rosenbaum and Pyke have alleged an injury

6    sufficient to survive a motion to dismiss.

7                                    (2)        Taxpayer Injury

8            The Ninth Circuit held that in RICO cases, the statute cannot be used "to recover for

9    derivative injuries because [a] plaintiff has no standing to assert a claim for injuries inflicted on a

10   different legal entity . . . that affect him only indirectly." *Uthe Tech. Corp. v. Aetrium, Inc.*, 739

11   F. App'x 903, 905 (9th Cir. 2018) (citing, *inter alia*, *Sparling v. Hoffman Constr. Co. Inc.*, 864

12   F.2d 635, 640–41 (9th Cir. 1988)). In the context of RICO claims brought by shareholders, the

13   Circuit has held that injury faced by plaintiffs "due to their status as guarantors of the bonds

14   given by the corporation is also derivative of the harm to the corporation," and thus the

15   shareholders lacked standing to sue. *Sparling*, 864 F.2d at 640–41.

16           The parties appear to agree that generally, taxpayers lack standing under RICO. Dkt. No.

17   12 at 11; *see* Dkt. No. 17 at 10. In a Seventh Circuit case, perhaps the only case on point,

18   plaintiffs paying a higher property tax rate had their RICO claims dismissed for lack of standing

19   because their injury was found to "derive[] from the County's" injury. *Carter v. Berger*, 777

20   F.2d 1173, 1174 (7th Cir. 1985). Similarly, here, to the extent Plaintiff BTU has been harmed by

21   higher tax rates due to racketeering activities by Defendants, Plaintiffs have not demonstrated

22   that Defendants proximately caused injury to BTU rather than to the City of Bainbridge Island.

23           Still, the Seventh Circuit left open the possibility of recovery by taxpayers indirectly

24   injured by RICO violations, so long as they could show that "the directly injured party was under

the continuing control or influence of the defendant or his henchmen." *Id*. at 1178. The only

allegation in the instant complaint supporting Defendants' continuing control of the City of

Bainbridge is that the City has failed "to take steps to void the Contract, notwithstanding the

significant damage suffered by the City and its taxpayers." Dkt. No. 17 at 10 (quoting Dkt. No.

1-1 ¶ 52). A lack of reversal of the multi-million dollar contract alone does not support a finding

of continuing control in this case where Defendants are no longer in the positions of power they

were in when the deal was made. *See* Dkt. No. 1-1 ¶¶ 6–7 (filing suit against "former" City

officials); Dkt. No. 20 at 7 (explaining that Defendants Medina and Smith are no longer City

officials).

Taking everything in the pleadings as true, incorporating the representations made at oral

argument, and making all *reasonable* inferences in favor of Plaintiffs, Plaintiffs have failed to

demonstrate a RICO injury to BTU. However, during oral argument, Plaintiffs represented that

there were more specific facts they could plead regarding the City's refusal to investigate the

supposed racketeering activity. Though the Court finds it difficult to imagine how Plaintiffs

would be able to show that the City is under Defendants' continuing control, it will grant

Plaintiffs an opportunity to amend the complaint to present more allegations to support BTU's

standing.

(3)     Attorney Fees

The only allegation in the complaint supporting Plaintiff Pollock's standing is that he

incurred approximately $8,000 in attorney fees to file his Ethics Board Complaint against

Defendant Medina regarding the alleged racketeering activity. Dkt. 1-1 ¶ 34. The parties agree

that the cost of filing a RICO action does not satisfy the injury requirement. Dkt. No. 12 at 12;

Dkt. No. 17 at 10; *see also Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1204 (C.D. Cal.

2008). Plaintiffs insist that the prior Ethics Board proceeding initiated by Plaintiff Pollock

qualifies as a RICO injury because it was proximately caused by the wrongful conduct of a RICO defendant (Medina). Dkt. No. 17 at 9. However, the authorities they cite, at most, support a finding that defending against litigation spurred by a RICO defendant's unlawful activity qualifies as a RICO injury. *See id.*; *see also Lauter v. Anoufriev*a, 642 F. Supp. 2d 1060, 1084–85, n. 33 (C.D. Cal. 2009) (plaintiff adequately alleged that defendants' racketeering activity proximately caused incurrence of legal fees to defend himself in criminal proceedings resulting from a police investigation); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1166–67 (2d Cir. 1993) (RICO injury found where defendants' illegal actions impeded plaintiff's collection on monetary judgments already obtained), *cert. denied* 510 U.S. 945; *Handeen v. Lemaire*, 112 F.3d 1339, 1354 (8th Cir. 1997) (RICO injury alleged where plaintiff incurred attorney fees to file objections to defendant's "supposedly fraudulent claims" in a bankruptcy proceeding). Here, Plaintiff Pollock voluntarily initiated a proceeding before the Ethics Board, which is more akin to seeking legal fees for filing the instant RICO action than it is similar to defending against litigation spurred by Defendants' unlawful activity.

At oral argument, Plaintiffs provided no new evidence or argument supporting Plaintiff Pollock's standing to bring RICO claims. They simply pointed to unpersuasive, out-of-circuit cases already cited in their opposition to the motion to dismiss (*Stochastic Decisions, Inc.*, 995 F.2d 1026, and *Handeen*, 112 F.3d 1339) to argue that his incurrence of legal fees to pursue the Ethics Board Complaint confers standing. In *Stochastic Decisions, Inc.*, and *Handeen*, the relevant parties were already engaged in separate litigation, and the defendants' racketeering activity impeded the RICO plaintiffs' ability to protect their business or property interests in those separate proceedings (collection of money judgments and collection against a bankruptcy petitioner, respectively). That is not the case here. Plaintiffs cannot manufacture a RICO injury

out of Plaintiff Pollock's financial outlay; Plaintiff Pollock's business or property interests were not at stake in the Ethics Board proceeding.

Taking everything in the pleadings as true, incorporating the representations made at oral argument, and making all *reasonable* inferences in favor of Plaintiffs, Plaintiffs have failed to demonstrate a RICO injury to Michael Pollock. The Court is convinced Plaintiff Pollock cannot demonstrate standing even if amendment were allowed. Therefore, the Court DISMISSES Plaintiff Pollock WITH PREJUDICE for lack of standing.

### b. Predicate Acts

The list of offenses that constitute racketeering under 18 U.S.C. § 1961(1) is exhaustive; no unenumerated offense can be considered a predicate act for RICO liability. *See Beck v. Prupis*, 529 U.S. 494, 497 n.2 (2000) ("Section 1961(1) contains an exhaustive list of acts of 'racketeering,' commonly referred to as 'predicate acts.' "). A subpart of § 1961(1) provides that the following relevant offenses fall within the definition of racketeering for RICO purposes: "any act or threat involving . . . bribery, extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A).

When a single action gives rise to multiple offenses enumerated under § 1961(1), it can be used as a basis for only one predicate act. *United States v. Walgren*, 885 F.2d 1417, 1426 (9th Cir. 1989). Plaintiffs allege that Defendants Medina and Smith engaged in "bribery and/or extortion" through predicate acts that violate RCW 9A.68.010(1)(a), RCW 9A.68.030(1)(b), RCW 9A.68.050(1)(b), RCW 42.23.030, and RCW 42.23.040, as well as 18 U.S.C. §§ 1341, 1343, 1346, and 1952. Dkt. No. 1-1 ¶ 45.

### (1)    State Law Offenses

Plaintiffs allege that Defendant Medina violated the Washington Code of Ethics for Municipal Officers by voting on the HMC proposal that he was "beneficially interested in" and

not disclosing his conflict of interest to the City Council. Dkt. No. 1-1 ¶ 45(d) (citing RCW 42.23.030 and RCW 42.23.040). These codes are not criminal provisions and do not constitute indictable offenses, even if relating to bribery or extortion, so they cannot be used to support a predicate act. At oral argument, the parties agreed that these ethics codes cannot be used as bases for predicate acts.

The other state law offenses Plaintiffs allege Defendants Medina or Smith engaged in do constitute felonies chargeable by more than one year imprisonment. *See* RCW 9A.68.010(1)(a), (3) (Bribery, class B felony); RCW 9A.68.030(1)(b), (2) (Receiving or granting unlawful compensation, class C felony); RCW 9A.68.050(1)(b), (2) (Trading in special influence, class C felony); *see also* RCW 9A.20.021(setting a ten-year maximum sentence for class B felonies and a five-year maximum sentence for Class C felonies). But as Defendants point out, Plaintiffs have not specifically alleged enough facts regarding bribery, receiving or granting unlawful compensation, or trading in special influence. *See* Dkt. No. 1-1; Dkt. No. 12 at 14.

Plaintiffs claim that Defendant Medina bribed Defendant Smith. *See* Dkt. No. 1-1 ¶ 45(a). A Washington statute they cite provides that bribery occurs when someone, "[w]ith the intent to secure a particular result in a particular matter involving the exercise of the public servant's vote, opinion, judgment, exercise of discretion, or other action in his or her official capacity, . . . offers, confers, or agrees to confer any pecuniary benefit upon such public servant." RCW 9A.68.010(1)(a). The other statute they cite provides that someone is guilty of receiving or granting unlawful compensation if: "[h]e or she knowingly offers, pays, or agrees to pay compensation to a public servant for advice or other assistance in preparing or promoting a bill, contract, claim, or other transaction regarding which the public servant is likely to have an official discretion to exercise." RCW 9A.68.030(1)(b). But the complaint fails to provide factual support for its allegations that "Medina offered or conferred pecuniary benefits upon Smith," or

that "Medina knowingly offered, paid, or agreed to pay compensation to Smith for assistance in promoting the Harrison proposal." *See* Dkt. No. 1-1 ¶ 45(a)–(b). Though Plaintiffs allege multiple times that the two withheld information about Medina's financial interests from the City Council, they do not allege in their recitation of facts that Medina had offered to pay or paid Smith to promote the HMC proposal. The closest Plaintiffs come to making such an allegation is in conclusory remarks essentially parroting the elements of the predicate act needed to support their first legal claim. *See* Dkt. No. 1-1 ¶ 45(a)–(b).

Plaintiffs also point to a Washington statute regarding trading in special influence to support their claim that Defendants Medina and Smith engaged in bribery or extortion; this statue criminalizes a person's acceptance of "any pecuniary benefit pursuant to an agreement or understanding that he or she will offer or confer a benefit upon a public servant or procure another to do so with intent thereby to secure or attempt to secure a particular result in a particular manner." RCW 9A.68.050(1)(b). Plaintiffs once again essentially parrot the statute in asserting that "Medina and Smith accepted pecuniary benefits pursuant to an agreement or understanding that they would help secure the Harrison proposal." Dkt. No. 1-1 ¶ 45(c). Yet again, Plaintiffs' recital of facts does not include important elements of this claim; they do not allege that Defendants Medina or Smith had an agreement or understanding that they would persuade the City Council to vote for the HMC proposal in order to further their personal financial interests. Plaintiffs did allege that Medina had a vague "financial relationship with and interest in HMC" as an attorney who had done work for the hospital (*id*. ¶ 13) and that HMC leadership "made substantial donations to, and were otherwise involved in," a non-profit organization for which Medina served as president and CEO. *Id*. ¶¶ 19–20. However, this alone does not show that Medina and Smith ever agreed to induce the City Council to vote in favor of

1    the HMC proposal to further each of their financial interests. In particular, it is not clear why or

2    how Smith had any financial interest in the HMC proposal.

3                            (2)    Federal Offenses

4           Plaintiffs allege that Defendants violated 18 U.S.C. § 1346 by knowingly using or

5    causing to be used "the mails and interstate wire communications." Dkt. No. 1-1 ¶ 45(f).

6    However, this code section is not an indictable offense, it merely defines "scheme or artifice to

7    defraud." *See* 18 U.S.C. § 1346. Even if this allegation was meant to allude to an indictable

8    offense, this code section is not listed as a potential predicate offense and thus cannot be used to

9    support a RICO claim. *See* 18 U.S.C. § 1961(1)(B) (listing the various provisions of Title 18 that

10   can give rise to a RICO claim). At oral argument, Plaintiffs agreed that 18 U.S.C. § 1346 on its

11   own cannot be used to support a predicate act.

12          Regarding Plaintiffs' allegations of wire and mail fraud under 18 U.S.C. §§ 1341 and

13   1343, fraud claims are subject to a heightened pleading requirement, which is far from met here.

14   An essential element of mail fraud includes "use of the mail." *See Schmuck v. United States*, 489

15   U.S. 705, 721 (1989), *reh'g denied*, 490 U.S. 1076; *accord United States v. Eglash*, 813 F.3d

16   882, 885 (9th Cir. 2016). Similarly, an essential element of wire fraud is "use of wire, radio, or

17   television to further the [fraudulent] scheme." *United States v. Pelisamen*, 641 F.3d 399, 409 (9th

18   Cir. 2011) (citation omitted).

19          Not only is there no description of how Defendants used U.S. mail or interstate wire

20   communications in furtherance of their schemes, the complaint fails to "state the time, place, and

21   specific content of the false representations," as required under Ninth Circuit precedent. *See*

22   *Odom*, 486 F.3d at 553. Plaintiffs have simply failed to plead *any* factual allegations regarding

23   use of U.S. mail or interstate wires, let alone plausible allegations. The word "mail" and

24   variations thereof appear only three times in the complaint, none of which are in their recital of

facts. The only place the word "mail" even appears is in reciting the elements of mail fraud. Dkt. No. 1-1 ¶ 45(e)–(g). While "the use of the mails need not be an essential element of the scheme," to prove mail fraud Plaintiffs must at least show that a mailing was an "incident to an essential part of the scheme" or "a step in the plot." *Schmuck*, 489 U.S. at 710–11 (explaining that the federal mail fraud statute is meant to reach "those limited instances in which the use of the mails is a part of the execution of the fraud"). In a similar case where mail and wire fraud were conclusorily alleged, the Ninth Circuit found RICO claims based on those predicate acts deficient under Rule 9(b) where the recital of facts "failed to mention any use of the mails or telephones," even though the plaintiff's legal claims section alleged that the defendants had violated 18 U.S.C. §§ 1341 and 1343 "by engaging on two or more occasions the use of the United States mail and/or use of interstate telephone calls" in furtherance of a fraudulent scheme. *Schrieber Distrib. Co.*, 806 F.2d at 1401.

Finally, Plaintiffs claim that Medina and Smith violated the Travel Act by using "the mails to distribute the proceeds of an unlawful activity–specifically, bribery in violation of Washington law–and otherwise promoted, managed, established, carried on, or facilitated the promotion, management, establishment, or carrying on, of that unlawful activity." Dkt. No. 1-1 ¶ 45(g) (citing 18 U.S.C. § 1952). Once more, Plaintiffs have made a conclusory allegation that paraphrases a statute but did not supply adequate factual content to back up the allegation. Notwithstanding their failure to allege acts of bribery under Washington law, they have also failed to show that Defendants Medina and Smith used U.S. mail to commit any acts of bribery.

Thus, Plaintiffs have failed to sufficiently allege any predicate acts giving rise to a RICO claim.

1

2

3

4

5

*c.   Pattern of Racketeering Activity*

A pattern of racketeering activity can be established when an individual has committed two or more qualifying predicate acts within ten years, excluding any period of imprisonment. 18 U.S.C. § 1961(5). Here, no pattern has been established as no predicate acts have been properly plead.

6

*d.   Interstate Activity*

7

8

9

10

11

12

To prevail on a civil RICO claim, "plaintiffs must demonstrate that the enterprise which is involved in or benefits from the racketeering activity is one engaged in, or having an effect on, interstate commerce." *Musick v. Burke*, 913 F.2d 1390, 1398 (9th Cir. 1990) (citations omitted). Plaintiffs need not demonstrate that the predicate acts themselves had an interstate effect. *Id*. (citation omitted). Defendants admit that the threshold for showing an interstate commerce nexus for RICO claims is low. Dkt. No. 12 at 18.

13

14

15

16

17

18

Plaintiffs have alleged that Defendants Medina and Smith "knowingly used or caused to use the mails and interstate wire communications" in furtherance of a fraudulent scheme. Dkt. No. 1-1 at ¶ 45(e)–(f). In their briefing, they characterize this as an "allegation that the defendants used the U.S. mail to execute portions of the illegal scheme." Dkt. No. 17 at 16. As the Court has already noted, however, the recital of facts does not actually include allegations regarding the use of U.S. mail or interstate wire communications.

19

20

21

22

23

24

In the briefing, Plaintiffs also insist that "two of the appraisals cited in the [c]omplaint were performed by an out-of-state corporation—Colliers." *Id*. at n.4 (citing Dkt. No. 1-1 at ¶¶ 23, 34). However, neither the complaint segments cited nor documents from a City of Bainbridge Island Ethics Board meeting linked by Plaintiffs in their briefing state that any appraisers were out-of-state entities. *See id*. The Court finds the complaint's allegations regarding a nexus to interstate commerce to be deficient.

Plaintiffs have failed to sufficiently allege a RICO claim under 18 U.S.C. § 1962(c), and the Court DISMISSES the claim.

### 2.    RICO Conspiracy Claim Under 18 U.S.C. § 1962(d)

Because Plaintiffs' RICO claim under 18 U.S.C. § 1962(c) fails, their dependent RICO conspiracy claim also fails. "To establish a violation of section 1962(d), a plaintiff must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). Plaintiffs have neither properly alleged an agreement substantively violating RICO nor Defendants' participation in two predicate offenses. Therefore, the Court DISMISSES this claim.

### D.    Leave to Amend

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co.*, 806 F.2d at 1401; *see also Ogden v. Wells Fargo Bank, NA*, 647 F. App'x 650, 651–52 (9th Cir. 2017) (explaining that dismissal with prejudice was warranted where plaintiff had not "identified a factual allegation that could plausibly get her RICO claims over the proximate-cause hurdle") (quoting *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011)), *cert. denied sub nom. Ogden v. Kwok*, 138 S. Ct. 252.

The Court will provide Plaintiffs one opportunity to amend their complaint—including only the claims asserted on behalf of Plaintiffs Rosenbaum, Pyke, and BTU, and without alleging violations of RCW 42.23.030, RCW 42.23.040, or 18 U.S.C. § 1346 as bases for predicate acts. The amendment may address all aspects of the federal RICO claims but should not include any allegations related to Plaintiff Pollock, who has been dismissed with prejudice. Plaintiffs are

encouraged to specifically name as defendants any Does they have been able to identify at this point in the litigation.[5] Plaintiffs are further encouraged to include as attachments, rather than as hyperlinks, any documents referenced in the amended complaint.

Plaintiffs are reminded that the revised complaint will supersede the current complaint. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925 (9th Cir. 2012).

### E.   State Law Claims

The Court DEFERS ruling on the remaining claims, as they are based in state law, until after it determines whether any Plaintiffs have standing and whether the federal RICO claims are properly plead in the amended complaint. In the absence of subject matter jurisdiction over any federal claims, a federal court cannot retain jurisdiction over any remaining state law claims. *Scott v. Pasadena Unified School Dist.*, 306 F.3d 646, 664 (9th Cir. 2002) ("we have no discretion to retain supplemental jurisdiction over [the] state law claims" after dismissal of the federal claim for lack of standing) (citing 28 U.S.C. § 1367(a)).

### IV.   CONCLUSION

For the above reasons, the Court:

(1) GRANTS Defendants' motion to dismiss IN PART, with respect to the civil RICO claims;

(2) DISMISSES Plaintiffs Rosenbaum, Pyke, and BTU's claims WITHOUT PREJUDICE;

(3) DISMISSES Plaintiff Pollock's claims WITH PREJUDICE for lack of standing;

(4) GRANTS Plaintiffs leave to amend only the RICO claims as specified herein in a manner that is consistent with their current pleading **within thirty (30) days of this Order** (*i.e.*, **by no later than December 23, 2022**); and

---

[5] During oral argument on the motion to dismiss, Plaintiffs indicated that there are several individuals that are not yet named as defendants whose identities are known.

1      (5) DEFERS ruling on the state law claims.

2      Dated this 23rd day of November 2022.

3

4      _____
       Tana Lin
5      United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24