1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9                                   AT SEATTLE

10

11   BAINBRIDGE TAXPAYERS UNITE, a              CASE NO. 3:22-cv-05491-TL
     Washington non-profit corporation, et al.,
12                                              ORDER OF REMAND
                          Plaintiff(s),
13           v.

14   THE CITY OF BAINBRIDGE ISLAND, a
     municipal corporation, et al.,
15
                          Defendant(s).
16

17

18          This action arises from purported misconduct by municipal officers in the purchase of

19   property by the City of Bainbridge Island. This matter is before the Court *sua sponte*. Having

20   considered the relevant record and finding oral argument unnecessary, *see* LCR 7(b)(4), the

21   Court REMANDS this case to the Kitsap County Superior Court.

22                              I.      BACKGROUND

23          On June 2, 2022, Plaintiffs brought suit in Kitsap County Superior Court. Dkt. No. 1-3.

24   Defendants removed the case to this Court on July 6 on the basis of federal question

jurisdiction.[1] Dkt. No. 1 ¶ 2. The Court summarizes the allegations of the operative complaint

and the procedural history of this case below, as relevant to this Order.

A.      The Allegations

        The Plaintiffs remaining in this action are Bainbridge Taxpayers Unite ("BTU"), Lee

Rosenbaum, and Janice Pyke. Dkt. No. 32 at 1 (amended complaint). BTU is a nonprofit

corporation consisting of individual residents of the City of Bainbridge (the "City"). *Id.* ¶ 1.

Rosenbaum and Pyke are residents of the City. *Id.* ¶¶ 2–3. The Defendants remaining in this

action are the City, Kolby Medina (former member of the City Council and former mayor of the

City), Joseph Levan (City Attorney), and "John and Jane Does 1-100." *Id.* ¶¶ 4–9; *see also* Dkt.

No. 47 (dismissing two Defendants not named here).

        Plaintiffs essentially allege that, when the City purchased real property from Harrison

Medical Center ("HMC") in January 2020 to build a Police and Municipal Court, the purchase

was the result of Defendants' unlawful actions—including material misrepresentations and

conflicts of interest. *See, e.g.*, Dkt. No. 32 ¶¶ 13–14, 18–21, 26–33, 38. Plaintiffs allege that,

among others, Defendant Medina advocated for the City's purchase of the HMC property while

concealing a conflict of interest created by donations from HMC's affiliates to a nonprofit

organization for which he serves as the President and CEO. *Id.* ¶¶ 18, 20, 22–24. Concerns about

Medina's conduct were raised to the City's Ethics Board, which dismissed the complaint for

---

[1] While Defendants claim to have timely removed within the 30-day time limit (Dkt. No. 1 ¶ 3), removal appears to have been one day late. Defendants represent that the clock started on June 6, 2022, when the City of Bainbridge was served with process (*id.*); the 30th day after that date—the last day on which the City could have removed—was July 5. *See* 28 U.S.C. § 1446(b). However, Plaintiffs failed to timely object to removal on this basis, and the Court cannot remand *sua sponte* for a non-jurisdictional procedural defect in removal. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal . . . ."); *Corona-Contreras v. Gruel*, 857 F.3d 1025, 1030 (9th Cir. 2017) ("Because [plaintiff] did not file a motion to remand, he waived any procedural defect in the removal, and the district court lacked the authority to remand *sua sponte*.").

1  failure to credibly show any violation of the City's Code of Ethics.[2] *Id.* ¶¶ 46, 48; Dkt. No. 38-1

2  at 7–9 (Ethics Board dismissal). Plaintiffs Rosenbaum and Pyke own real property that was in

3  competition for the HMC real property, and Plaintiffs allege that Rosenbaum and Pyke's

4  property was the superior and cheaper option for the City's purposes. *Id.* ¶ 18.

5         Plaintiffs assert the following causes of action: (1) two claims under the federal

6  Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), (d); (2) a

7  claim under the Washington Code of Ethics for Municipal Officers (the "Code of Ethics"), RCW

8  42.23.020(2) and 42.23.030; and (3) a claim under the Washington Uniform Declaratory

9  Judgments Act for a violation of RCW 42.23.050, another provision of the Code of Ethics. Dkt.

10  No. 32 at 14–20. Plaintiffs seek: treble damages and punitive damages under RICO; declaratory

11  judgment and injunctive relief declaring the City's purchase agreement of the HMC property

12  void and enjoining the City from executing any further related contracts with the HMC property;

13  fees and costs; and any other relief as may be appropriate.[3] *Id.* at 20–21.

14  **B.    Procedural History**

15         Following removal, Defendants moved to dismiss Plaintiffs' claims. Dkt. No. 12. The

16  Court granted the motion in part, dismissing Plaintiffs' RICO claims and deferring consideration

17  of the remaining state law claims pending the resolution of whether Plaintiffs have standing and

18  whether Plaintiffs could amend their complaint to state a RICO claim.[4] Dkt. No. 31 at 24.

19  Plaintiffs subsequently filed an amended complaint (Dkt. No. 32), as summarized above.

20

21  [2] The Ethics Board complaint does not appear to have been lodged by the remaining Plaintiffs in this action. *See*
    Dkt. No. 32 ¶¶ 46, 48.

22  [3] As Plaintiffs subsequently dismissed their RICO claims, they presumably do not seek—and are no longer entitled
    to—potential damages.

23  [4] As Defendants correctly note (Dkt. No. 49 at 7), the Court would lack discretion to retain supplemental jurisdiction
    over Plaintiffs' state law claims if the federal claims were dismissed for lack of subject matter jurisdiction (*e.g.*,
24  standing), as opposed to on the merits. *See Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002).

On January 31, 2023, during a meet and confer, the City provided Plaintiffs notice of its intent to seek sanctions based on a belief that Plaintiffs' Amended Complaint contains allegations directly contradicted by the evidence produced during discovery or otherwise unsupported by evidence or law.[5] Dkt. No. 51 ¶ 4. Plaintiffs declined to withdraw the Amended Complaint. *Id.* Defendants again moved to dismiss, arguing that Plaintiffs' RICO claims should be dismissed and that Plaintiffs' remaining state law claims should be addressed by the Court and also dismissed. Dkt. No. 38 at 2–3.

Defendants in part rely on an argument that Plaintiffs' state law claims are barred because Washington law does not provide for a specific statute of limitations for Plaintiffs' claims under the Code of Ethics and therefore a two-year "catchall" statute of limitations should apply. *Id.* at 20–22; *see also* Dkt. No. 54 at 2 ("[T]heir declaratory judgment claim is subject to the same limitations period as their ethics claim.").

On February 15, 2023, the City again served notice on Plaintiffs that it would seek sanctions if Plaintiffs did not withdraw the Amended Complaint. Dkt. No. 51 ¶ 5. Plaintiffs agreed to withdraw their RICO claims. *Id.* ¶ 6. In their subsequent opposition to the motion to dismiss, Plaintiffs stipulated to the dismissal of their RICO claims, representing that they "believe they have sufficiently stated their RICO claims" but were choosing to dismiss their RICO claims because "Plaintiffs lack the resources to continue to prosecute their RICO claims" and "Defendants have made it clear this will be a ground war similar to one taking place in another part of the world." Dkt. No. 45 at 5. Separately, Plaintiffs agreed that the same statute of limitations governs their remaining state law claims but argued that the claims are timely because

---

This is no longer at issue here, where Plaintiffs' federal claims have not been dismissed for lack of standing or other jurisdictional bases.

[5] Defendants also represent that Plaintiffs have not produced any documents, despite Defendants' request for evidentiary support for Plaintiffs' allegations and the City having produced 5,698 documents. Dkt. No. 51 ¶ 3.

1   they are governed by a different, six-year statute of limitations. Dkt. No. 45 at 5–6. Plaintiffs

2   then moved for the dismissal of their RICO claims, which Defendants did not oppose (Dkt. No.

3   46) and the Court granted (Dkt. No. 47). As a result, only Plaintiffs' state law claims remain.

4        The Court ordered Defendants to show cause why the case should not be remanded back

5   to Kitsap County Superior Court. Dkt. No. 48. Defendants responded, objecting to remand and

6   asking the Court to exercise supplemental jurisdiction over the remaining state law claims. Dkt.

7   No. 49 at 1. At the Court's invitation (Dkt. No. 53), Plaintiffs also responded, taking no position

8   on whether the Court should exercise its supplemental jurisdiction (Dkt. No. 55 at 2). Defendants

9   then filed a notice of supplemental authority, noting that a recent unpublished decision of a

10  Washington Court of Appeals appears to hold that the two-year "catchall" statute of limitations

11  applies to claims arising under RCW 42.23.050. Dkt. No. 52.

12  ## II.   LEGAL STANDARD

13       In an action where a district court has original jurisdiction over federal law claims, the

14  court also has supplemental jurisdiction over state law claims that are "so related" to the federal

15  law claims "that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). The

16  court may decline to exercise supplemental jurisdiction over such state law claims if:

17        (1)   the claim raises a novel or complex issue of State law,

18        (2)   the claim substantially predominates over the claim or

19              claims over which the district court has original jurisdiction,

20        (3)   the district court has dismissed all claims over which it has original jurisdiction, or

21        (4)   in exceptional circumstances, there are other compelling

22              reasons for declining jurisdiction.

23  *Id.* § 1367(c).

24

1    Enacted in 1990, 28 U.S.C. § 1367 codifies a modification of the doctrine of "pendent

2    jurisdiction," which directed courts to "consider and weigh in each case, and at every stage of the

3    litigation, the values of judicial economy, convenience, fairness, and comity in order to decide

4    whether to exercise jurisdiction over a case brought in that court involving pendent state-law

5    claims." *Carnegie–Mellon Univ. v. Chill, Jr.*, 484 U.S. 343, 350 (1988) (citing *United Mine*

6    *Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966)); *see also* Charles Alan Wright & Arthur

7    R. Miller, Federal Practice and Procedure § 3567.3 (3d ed., Apr. 2023 Update) ("Legislative

8    history makes clear that Congress intended to codify *Gibbs* concerning discretionary decline of

9    supplemental jurisdiction."). The court may also consider whether the plaintiff has attempted any

10   forum manipulation. *Carnegie–Mellon Univ.*, 484 U.S. at 357. A court may evaluate these

11   "*Gibbs* factors" once at least one § 1367(c) condition is triggered. *See Acri v. Varian Assocs.,*

12   *Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc), *supplemented and amended by* No. 95–1666,

13   1997 WL 525450 (9th Cir. Aug. 25, 1997).

14   Discretionary supplemental jurisdiction "allow[s] courts to deal with cases involving

15   pendent claims in the manner that most sensibly accommodates a range of concerns and values."

16   *Carnegie–Mellon Univ.*, 484 U.S. at 350. Recognizing this, the Ninth Circuit generally defers to

17   the district court's discretion in deciding whether to retain supplemental jurisdiction. *See, e.g.*,

18   *Schneider v. TRW, Inc.*, 938 F.2d 986, 993–94 (9th Cir. 1991) ("Supreme Court and Ninth

19   Circuit precedent teaches us that the district court is in the best position to judge the extent of

20   resources invested in a case and that, therefore, the district court's discretion ought not be lightly

21   disturbed.").

22   If a court declines to exercise supplemental jurisdiction and retain the remaining state law

23   claims, it may either dismiss the case or remand the case to state court. *See Carnegie–Mellon*

24

*Univ.*, 484 U.S. at 348, 357 (holding that district courts may remand rather than dismissing a removed case where only state law claims remain).

### III.   DISCUSSION

The Parties agree that Plaintiffs are not entitled to remand and that it is squarely within the discretion of the Court to retain or remand this case.[6] Indeed, the Ninth Circuit has affirmed a district court's discretion to retain supplemental jurisdiction even where the plaintiff voluntarily dismisses the federal claims. *See Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) (noting plaintiff seeking dismissal of federal claims "does not divest the district court of its power to exercise supplemental jurisdiction").[7]

At least two of the Section 1367(c) factors are triggered here: Plaintiffs' state law claims raise a novel or complex issue of state law (*see infra*, Section III.B.3); and the Court has dismissed (at Plaintiffs' request) all claims over which it had original jurisdiction. *See* 28 U.S.C. §§ 1367(c)(1), (3). Therefore, the Court must weigh the *Gibbs* values of judicial economy, convenience, fairness, and comity to decide whether to exercise supplemental jurisdiction over the remainder of this action.

### A.     The Parties' Positions

Defendants argue that the *Gibbs* factors weigh in favor of retaining supplemental jurisdiction, pointing to the nine (now ten) months of time that this case has been in federal court, the two rounds of briefing that have occurred on the motion to dismiss (including on the state law claims), the near completion of the City's construction project on the disputed HMC

---

[6] The Court may also dismiss the remaining state law claims but declines to exercise that option.

[7] In any case, because the Court exercises its discretion to remand the case, whether a plaintiff's voluntary dismissal of their federal claims deprives a Court of supplemental jurisdiction is moot. *Cf.* Wright & Miller § 3567.3 (noting that when "the complaint is formally amended to delete the jurisdiction-conferring claim . . . [,] the case should be treated as though the plaintiff has pleaded no basis of federal jurisdiction . . . , and the court may not retain jurisdiction of the non-federal claims").

1   property at issue, and other factors in this case. Dkt. No. 49 at 7, 9–14. Defendants heavily rely

2   on *Harrell v. 20th Century Insurance Co.*, in which the Ninth Circuit in relevant part affirmed

3   the district court's discretion to retain supplemental jurisdiction in a case with some parallels to

4   the one before this Court: There, the action had been removed to federal court and the parties had

5   then stipulated to the dismissal of plaintiffs' RICO claims, after which the district court had

6   dismissed the remaining state law claims on statute of limitations grounds. 934 F.2d 203, 205–06

7   (9th Cir. 1991). Defendants also argue that Plaintiffs have engaged in forum manipulation, which

8   the Supreme Court has instructed should be taken into account. *See Carnegie–Mellon Univ.*, 484

9   U.S. at 357; Dkt. No. 49 at 8, 13–14.

10          Plaintiffs take no position on whether the case should be remanded.[8] Dkt. No. 55 at 2.

11   Instead, Plaintiffs spend the majority of their response to the issue reiterating and building on

12   their opposition to Defendants' motion to dismiss. *See* Dkt. No. 55 at 2:12–9:18 ("For the

13   Court's convenience, Plaintiffs reiterate their arguments in opposition to Defendants' Motions to

14   Dismiss below . . . ."). Except to the extent that Plaintiffs address other points (*e.g.*, responding

15   to Defendants' supplemental authority, *see id.* at 4:22–5:10), Plaintiffs' response constitutes an

16   improper surreply and is STRICKEN.

17   **B.    The *Gibbs* Factors**

18          In weighing the *Gibbs* factors, the Court acknowledges that this is a close case.

19   Ultimately, however, the Court finds that the circumstances of this case warrant remanding to the

20   state courts for adjudication.

21

22

23

24

[8] Plaintiffs did request in their earlier opposition to the motion to dismiss that the Court deny the motion or, in the alternative, remand to state court on the state law claims. Dkt. No. 45 at 12.

1

### 1.      Judicial Economy & Convenience

2          The Supreme Court has stated that, "when the federal-law claims have dropped out of the

3   lawsuit in its early stages and only state-law claims remain, the federal court should decline the

4   exercise of jurisdiction . . . ." *Carnegie–Mellon Univ.*, 484 U.S. at 350 (footnote omitted). As for

5   when a lawsuit is "in its early stages," the Supreme Court has suggested that where "all federal-

6   law claims are eliminated *before trial*, the balance of factors to be considered . . . will point

7   toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n.7

8   (emphasis added).

9          This case has been in federal court for less than a year and remains at the pleadings stage.

10  No trial schedule has been set. *See* Dkt. No. 28 (order finding good cause to delay entry of a case

11  management scheduling order). This suggests that the case is still in its early stages and should

12  be remanded. The Court recognizes, however, that the time that this case has been before this

13  Court and the motions practice that the Parties have engaged in are not insignificant. And,

14  certainly, courts have chosen to retain a case following motion-to-dismiss briefing and an

15  amended complaint. *See, e.g.*, *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1309 (9th

16  Cir. 1992) (holding that the district court did not abuse its discretion because the case "ha[d]

17  been in federal court for some time now" and "the federal claims were substantial"), *abrogated*

18  *on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) (en banc); *see also King v.*

19  *Rumbaugh*, No. C17-31, 2017 WL 1283501, at *5 (W.D. Wash. Apr. 6, 2017) (finding

20  convenience weighed in favor of retaining the case where parties had already briefed state law

21  claims and the court could resolve claims). But the Ninth Circuit has repeatedly declined to set

22  specific limitations, instead emphasizing that "it is the *district* judge who is in the best position to

23  determine whether enough resources have been expended" to retain the case. *See, e.g.*,

24  *Schneider*, 938 F.2d at 994 (noting the Ninth Circuit has upheld both dismissals and retention of

1  pendent claims after summary judgment on federal claims). The cases that Defendants cite[9] do

2  not provide otherwise.

3        Defendants argue that the Parties have expended significant resources on the state law

4  claims, with the issues having been briefed twice and the Court having conducted a hearing on

5  Defendants' first motion to dismiss. The Court acknowledges the Parties' expenditures. But the

6  state law claims were not addressed at the hearing, and the Parties' research and briefing on the

7  issues can presumably be leveraged into efficient briefing before a state court. Further, retaining

8  the case would not save *judicial* resources, as the Court has yet to examine the Parties' state law

9  claims (except to the extent summarized below for the purposes of analyzing the "comity" *Gibbs*

10  factor). Indeed, the Court explicitly focused on Plaintiffs' federal RICO claims at the hearing and

11  in its order resolving Defendants' first motion to dismiss. *See* Dkt. No. 31 at 24 (deferring ruling

12  on state law claims pending resolution of RICO claims).

13        Finally, Defendants argue that "further delay does not serve judicial economy,"

14  emphasizing that Plaintiffs delayed filing their claims and, as a result, the City's development of

15  the HMC property is nearing completion and "renders [Plaintiffs' relief] impractical or

16  impossible." Dkt. No. 49 at 10. While the Court sympathizes with Defendants' concerns, it is not

17  clear that a quicker resolution of this case would make any difference when Defendants argue

18  that it is already too late.

19        It is also not guaranteed—or even likely—that the Court's retention of this case would

20  result in a quicker resolution. For example, even if the Court were to retain this case, it could be

21  appropriate to refer the state law issues to the Washington Supreme Court (*see infra*, Section

22  III.B.3), resulting in further delay.

23  

24  [9] Defendants rely in part on cases decided before 28 U.S.C. § 1367 was enacted; these citations appear to have been lifted from the Ninth Circuit's decision in *Schneider. Compare* 938 F.2d at 994 *with* Dkt. No. 49 at 9:23–10:1.

1    Defendants' reliance on *Naragon v. Dayton Power & Light Co.*, from a court outside this

2    Circuit, is unpersuasive. 934 F. Supp. 899 (S.D. Ohio 1996). The case is both non-binding and

3    easily distinguishable, as the parties were nearly at the end of discovery. *Id.* at 902. The *Naragon*

4    court also found that the plaintiff was "plainly, almost confessedly, engaged in forum

5    manipulation," *id.*, which the Court (as explained in the next section) does not find here. Finally,

6    it is clear that the court in *Naragon* was heavily influenced by a state procedural rule that the

7    court believed would provide plaintiff with significant and unfair litigation advantages if

8    remanded to state court. *See id.* at 902–03. Defendants do not contend there is a similar concern

9    in this case.

10    Accordingly, the Court finds that judicial economy and the convenience of the Parties, at

11    best, only weigh moderately against remand.

12    **2.    Fairness**

13    There are no significant fairness concerns at issue. For one, the Parties have had notice of

14    the possibility of the case being remanded if the RICO claims were dismissed since at least

15    November 2022 and should have expected the case to be remanded if the RICO claims were

16    dismissed. *See, e.g.*, Dkt. No. 31 at 24. Nonetheless, Defendants did not object to Plaintiffs'

17    dismissal of their RICO claims. Dkt. No. 46.

18    Instead, Defendants argue that Plaintiffs have engaged in forum manipulation. While

19    forum manipulation would ordinarily cut against remand, the Court hesitates to find that

20    Plaintiffs have engaged in such tactics here. *See, e.g.*, *King v. Wright Finlay & Zak*, No. C16-

21    397, 2016 WL 1579234, at *5 (W.D. Wash. Apr. 20, 2016) (finding plaintiff did not engage in

22    manipulative tactics). Defendants undermine their own point by arguing in the same breath that

23    Plaintiffs dismissed their RICO claims because the claims were "meritless" and to avoid

24    sanctions. Dkt. No. 49 at 4, 13. Notably, Plaintiffs themselves take no position as to whether the

case should be remanded. Dkt. No. 55 at 2. While the Court is somewhat skeptical of Plaintiffs'

purported reasoning for dismissing their RICO claims (Dkt. No. 45 at 5), Defendants' assertions

regarding Plaintiffs' motivations are speculative and unsupported.

Defendants point to the near completion of the construction project, again arguing that

further delaying the resolution of this case by remanding it "could impact the City's ability to

complete its project and occupy the new Police-Court facility." Dkt. No. 49 at 12–13. The Court

has already addressed this concern above.

Accordingly, fairness does not weigh for or against remand.

**3.    Comity**

The Supreme Court has counseled that "[n]eedless decisions of state law should be

avoided both as a matter of comity and to promote justice between the parties, by procuring for

them a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726. The remaining causes of

action and relief that Plaintiffs seek arise under the State's Code of Ethics. In short, Plaintiffs

seek the Court's ruling and intervention in how a municipality of this State can enter into

contracts—here, the purchase of real property for the construction of a local court—and how the

municipality's officers must conduct themselves in the process. These issues implicate sensitive

local, political, and ethical concerns of the localities of this State. The Court strongly believes

that it should, where possible, defer to the state courts to decide such issues.

Defendants argue that the threshold issue of whether Plaintiffs' Code of Ethics claims are

barred by a statute of limitations is "the type of straightforward state law issues frequently

decided by federal courts." Dkt. No. 49 at 12. Indeed, the Ninth Circuit in *Harrell* found that the

district court had appropriately retained jurisdiction when it dispatched the remaining state law

claims as time barred. 934 F.2d at 207–08 (affirming supplemental jurisdiction but reversing in

part on which statute of limitations applied to a claim for breach of the covenant of good faith

and fair dealing). But *Harrell* itself points out that the Supreme Court has "indicated its

disapproval of a district court's retention of jurisdiction to adjudicate a statute of limitations

issue." *Harrell*, 934 F.2d at 205 (citation omitted) (quoting *Carnegie–Mellon Univ.*, 484 U.S. at

352 n.10). As further discussed below, *Harrell* does not support Defendants' arguments.

The Court does not disagree with Defendants that (1) *if* determining the statute of

limitations that govern Plaintiffs' Code of Ethics claims were straightforward and (2) *if* that

statute of limitations were the two-year catchall statute of limitations, such that Plaintiffs' claims

are time barred and must be dismissed, the balance of factors in this case *might* weigh in favor of

retaining and resolving the case. With this in mind, the Court has briefly but conscientiously

examined the statute of limitations issue. As set forth below, however, the Court finds that:

(1) the statute of limitations issue is sufficiently murky in state law that it is best left to the courts

of this state to resolve in the first instance; and (2) because there is a possibility that Plaintiffs'

claims are not time barred and should be resolved on their merits, a state court is best positioned

to resolve this case.

### a.    *The Relevant RCW Provisions*

Plaintiffs' remaining state law claims arise under the following provisions of the Code of

Ethics:

> No municipal officer shall be beneficially interested, directly or
> indirectly, *in any contract* which may be made by, through or
> under the supervision of such officer, in whole or in part, or which
> may be made for the benefit of his or her office, or accept, directly
> or indirectly, any compensation, gratuity or reward *in connection
> with such contract* from any other person beneficially interested
> therein.

RCW 42.23.030 (emphases added). And, "[a]ny contract made in violation of the provisions of

this chapter is void . . . ." RCW 42.23.050.

The Parties agree that the Code of Ethics does not contain a statute of limitations. *See* Dkt. No. 45 at 6. Plaintiffs contend that their claims are governed by a Washington six-year statute of limitations that governs any "action upon a contract in writing, or liability express or implied arising out of a written agreement." RCW 4.16.040. Defendants argue that, because Plaintiffs' claims do not arise under a written contract (though related to one), the two-year "catchall" statute of limitations provided in Washington law governs instead. *See* RCW 4.16.130 ("An action for relief not hereinbefore provided for, shall be commenced within two years after the cause of action shall have accrued.").

The key issue, then, is whether this case—grounded in Code of Ethics provisions that govern a municipal officer's conduct in relation to a contract and where the relief provided for is voiding said contract—is an action "upon" a written contract or "liability . . . arising out of" a written agreement. *See* RCW 42.23.030, 42.23.050, 4.16.040. If not, the governing statute of limitations would be the "catchall" two-year statute of limitations. The language of the statutory provisions does not provide a conclusive answer, and so the Court turns to case law.

### b.     Case Law

This appears to be an unsettled question in Washington case law. Defendants point to a single unpublished decision of a Washington Court of Appeals that found, without analysis, that the two-year statute of limitations applied to the plaintiff's claims, which included RCW 42.23.050.[10] *Irwin Law Firm, Inc. v. Ferry Cnty.*, No. 38234-6-III, 2023 WL 1158538, at *3 (Wash. Ct. App. Jan. 31, 2023) ("The two-year default applies because none of the foregoing causes of action fall under an alternate statute of limitations term." (footnote omitted)). It is

---

[10] Defendants failed to incorporate this case into their motion to dismiss or opposition to remand. *See* Dkt. No. 52 (representing that the case was "discovered . . . after filing [Defendants'] Response to Order to Show Cause," despite the decision having been issued before the motion to dismiss was filed). However, Plaintiffs have had an opportunity to respond to Defendants' citation to this case. Dkt. No. 55 at 4–5.

1    unclear whether this issue was disputed in *Irwin Law Firm, Inc.*, much less whether the Court of

2    Appeals examined the propriety of the six-year statute of limitations. As an unpublished opinion,

3    it also holds no precedential power over *any* Washington state court, much less this Court. *See*

4    Wash. Courts General Rule 14.1. Parties do not cite to any other Washington case (or federal

5    case) addressing the issue—nor is the Court aware of any.

6    Instead, the Parties rely on cases that they argue are analogous. Plaintiffs cite to case law

7    on how courts determine the statute of limitations that governs a *federal* statutory claim, which is

8    of limited value here. *See* Dkt. No. 45 at 6–7; *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1101

9    (9th Cir. 2018) ("When there is no statute of limitations expressly applicable to a federal statute,

10   . . . the general rule is that a state limitations period for an analogous cause of action is borrowed

11   and applied to the federal claim." (citation and internal quotation marks omitted) (quoting *Cnty.*

12   *of Oneida v. Oneida Indian Nation of N.Y.*, 470 U.S. 226, 240 (1985))). Defendants point to a

13   decision of this District finding, without analysis, that a Washington Open Public Meetings Act

14   claim was barred by the catchall statute of limitations. *See Garrett v. City of Seattle*, No. C10-94,

15   2010 WL 4236946, at *4 (W.D. Wash. Oct. 20, 2010); Dkt. No. 49 at 12. But *Garrett* sheds no

16   light on whether RCW 42.23.030 and RCW 42.23.050 trigger the contract-specific statute of

17   limitations: The Washington Open Public Meetings Act provision at issue does not mention—

18   nor did the facts of the case appear to implicate—any written contract, *see* RCW 42.30.120, and

19   *Garrett* does not cite to Washington law explaining why it chose the statute of limitations. The

20   Parties' citations to Washington case law also provide no clear authority on the issue. *See, e.g.*,

21   Dkt. No. 38 at 20–22; Dkt. No. 45 at 5–8.

22                        c.        **Comity Concerns**

23   The Court is hesitant to wade further into the thicket of the Parties' cited cases for the

24   comity-related concerns previously expressed. Deciding this issue will determine how litigants of

this State may enforce the Code of Ethics against municipal officers and their conduct in relation

to important contracts for (or in relation to) the municipality. "When all federal claims are

eliminated before trial, retaining jurisdiction only over complex questions of state law becomes,

in some circumstances, especially inappropriate." *Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158,

1181 n.28 (9th Cir. 2003) (instructing district court to remand remaining "policy-laden" state law

claims to the state court). Even if this Court were to retain this case, it might be prudent for the

Court to certify this statute of limitations question—and, if needed, the resolution of Plaintiffs'

Code of Ethics claims on their merits—to the Washington Supreme Court. *See Tsao v. Desert*

*Palace, Inc.*, 698 F.3d 1128, 1149–50 (9th Cir. 2012) (disposing of federal claims and noting that

remaining state law claims "are potentially weighty and unsettled questions of state law" that

would warrant certification to the state supreme court). *But see Ziegler v. Ziegler*, 28 F. Supp. 2d

601, 620 (E.D. Wash. 1998) (noting comity concerns can be addressed by certifying questions to

the state supreme court). To do so, however, would extinguish the main benefits of retaining the

case, as it would force the Parties to again brief the state law claims and cause a delay in

proceedings. Therefore, no persuasive reason exists for the Court to retain this case.

Despite Defendants' reliance on it, *Harrell* does not instruct otherwise. First, because

*Harrell* neither cites to 28 U.S.C. § 1367 (despite having been issued after the statute was

enacted) nor engages in the *Gibbs* factors analysis, it is unclear how *Harrell* governs the current

law on supplemental jurisdiction. Second, and more importantly, *Harrell* itself acknowledged

that remand is generally appropriate when only state law claims remain, and only held that it was

not an abuse of discretion for the district court to have nonetheless retained the case. 934 F.2d at

205. Third, while *Harrell* resolved statute of limitations issues under state law, this was based on

a fact-specific determination of when a cause of action (for fraud) had accrued and a

determination of the appropriate statute of limitations based on case law from the California

Supreme Court—the type of guidance that the Court lacks here. *Id.* at 206–08. In short, the *Harrell* analysis reflected the "type of straightforward state law issues frequently decided by federal courts" (Dkt. No. 49 at 12) that are not before this Court.

Ultimately, this is an unresolved and novel issue without clear guidance in Washington law. No Washington state court appears to have analyzed the issue in any significant depth. The Court is hesitant to be the first to analyze the issue in place of the courts of this State given its implications in how litigants of this State may bring suit against their municipalities and municipal officers. And, if the Court were to ultimately conclude that the six-year statute of limitations governs Plaintiffs' remaining claims, the Court would have to tackle even more sensitive issues of local politics and ethics in resolving the merits of the claims. Accordingly, the final *Gibbs* factor, comity, weighs strongly in favor of remand.

The primary import of *Harrell* and the body of Ninth Circuit case law on discretionary supplemental jurisdiction is that district courts are entrusted with wide discretion on making the appropriate determination of whether retaining or remanding a specific case is appropriate. Here, the Court has carefully weighed the relevant factors of this case and finds it appropriate to remand this case to the Kitsap County Superior Court. The Court hopes that its summary of the contours of the statute of limitations issue can be of some help in minimizing the future expenditure of judicial and Parties' resources.

## IV.   CONCLUSION

Accordingly, it is hereby ORDERED:

(1)     Plaintiffs' response to the Court's order to show cause (Dkt. No. 55) is STRICKEN in part to the extent that it constitutes an improper surreply.

(2)     This matter is REMANDED to Kitsap County Superior Court.

//

(3)     All pending motions and deadlines in this matter are VACATED.

Dated this 25th day of April 2023.

_____
Tana Lin
United States District Judge